## Leftwrich, Appellant, *v.* Colonial Aluminum Smelting Corporation (et al., Appellant).

Argued October 4, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*David B. Skillman,* for insurance carrier, appellant.

*Wilson Bucher,* for claimant, appellant.

*Ralph M. Barley,* with him *Barley, Snyder, Cooper & Mueller,* for insurance carrier, appellee.

OPINION BY ERVIN, J., November 12, 1957:

This is essentially a contest between two insurance carriers in a workmen's compensation case. On June 1, 1955 claimant filed his claim petition with the Workmen's Compensation Board, alleging that "The accident occurred while I was tending the drier when hot metal from the drier flew into my right eye" on March 10, 1955 (on which date Pennsylvania Manufacturers' Association Casualty Insurance Company, hereinafter called "Pennsylvania," was the insurance carrier for Colonial Aluminum Smelting Corporation, hereinafter called "Colonial," the defendant). The claim petition further averred that as a result of this accident an infection set in the eye, causing the eventual removal of the eye on April 21, 1955. "Colonial" and "Pennsylvania" filed an answer denying the material allegations of the claim petition. On September 21, 1955 a hearing was held before a referee, at which time the claimant testified that he was hit in the right eye by metal turnings on March 10, 1955 and that he reported the accident to his foreman. Dr. Lombard testified that he first saw claimant on March 10, 1955; that he flushed dust particles from claimant's eye with salt solution and gave him an antibiotic ointment to put in and then referred him to Dr. Deck. He also testified that he saw claimant only once and that was on March 10, 1955. The hearing was then continued owing to the absence of claimant's other medical witnesses, Dr. Deck and Dr. Posey. A second hearing was held January 24, 1956, at which time Dr. Deck testified that claimant had suffered an earlier injury on November 4, 1954 and that, in his opinion, the loss of claimant's eye was the result of the earlier injury (at which time American Mutual Liability Insurance Company, hereinafter called "American," was the insurance carrier for "Colonial"). Dr. Posey testified that he removed the eye on April 21, 1955 and

that "Vision at this time is nil. The eye was blind pre-operatively and post-operatively—operation procedure was done for relief of pain." He further testified that the claimant, in giving him his history, said that he was struck in the right eye with a foreign body while feeding an aluminum drier in November; that he was seen by Dr. Deck approximately one week later; that his right eye stayéd sore; that the vision of the right eye was normal prior to the November accident. Dr. Posey further said: "As far as I am concerned, it is impossible for me to determine the etiology of this patient's condition." At the close of this second hearing, the referee suggested that claimant amend his claim petition to show the earlier accident of November 4, 1954. Pursuant to the referee's suggestion, counsel for claimant moved for such an amendment and the same was allowed by the referee. Claimant at no time abandoned his contention that he suffered an injury to his right eye on March 10, 1955. The amendment simply added the November 4, 1954 accident and did not delete the original allegation of the March 10, 1955 accident. The referee then asked that notice of a continued hearing be given "American" since that carrier was on the risk on November 4, 1954. On May 8, 1956 the continued hearing was held, at which time counsel for "American" cross-examined Dr. Deck. Dr. Deck admitted that on June 5, 1955 he wrote a letter to "American" in which he stated "I'm positive his injury of March 21 was the cause of the dislocated lens and the secondary glaucoma." It was agreed that he meant "March 10" instead of "March 21." The doctor endeavored to explain the inconsistency between his oral testimony as given at the hearing and his statement in the letter of June 5, 1955, as follows: "Why I wrote that I just don't know, except I thought here's an insurance paper, let me get rid of it. You drive us mad with your insurance

papers." The doctor's letter of June 5, 1955 was offered in evidence by the attorney for "American" without objection. At this continued hearing, counsel for "American" also offered in evidence, without objection, as Exhibit No. 1, the written statement made and signed by claimant on May 20, 1955, which statement had been given to a representative of "American." In this statement claimant said, inter alia: "On November 1954 I was doing my regular job shoveling aluminum turnings into the dryer. The dryer went out and I then stood to the front and side of the dryer and had my goggles off in my hand cleaning them, when the dryer started up again the gas caused the aluminum turnings to fly out of the dryer and some got into my right eye. I reported my injury immediately to Jack and I was sent to Dr. Denny immediately and he, Dr. Denny, sent me to Dr. Roy Deck, Lancaster, Pa., at his office the same day. Dr. Denny did not give me any treatment. When Dr. Deck examined my right eye he washed it out and gave me eye drops to put into my right eye twice a day—in the morning and afternoon. Dr. Deck did not tell me to return for any further treatment after he saw me the first time. After Dr. Deck cleaned my eye out on Nov., 1954 my eye felt good and was all right and did not bother me at all and I did not lose any time from work. On March 21, 1955, I was again shoveling aluminum turnings into dryer when the dryer went out and I was again standing to the front of the dryer door cleaning my goggles when the dryer started up again and the aluminum turnings blew out and some entered my right eye. I was sent by Polly, the Supt., to Dr. Robert Lombard immediately following the accident and he cleaned out—swabbed out—the right eye and gave me eye drops to put into my right eye in the morning and afternoon.

"I only used eye drops for a month following the first right eye injury that occurred November 1954.

"About one month after being treated by Dr. Lombard for the eye injury I received in March, 1955, I began to get severe pains above the right eye and along the right side of my head, and I reported this to Jack, the floor Supt., and he sent me to Dr. Deck, Lancaster, Pa., and when Dr. Deck examined me he sent me immediately to Dr. Posey, who examined me in his office and had me admitted to the St. Joseph's Hospital, Lancaster, Pa., that same day about 9:00 p.m. My skull was X-rayed immediately and Dr. Posey operated that same evening. My skull was X-rayed following the operation and I received quite a few shots. I was in the Hospital about 13 days. I do not have any sight in my right eye now.

"Between November 1954 and March 1955 my right eye did not give me any trouble or pain and I had no trouble seeing as I always did. It was after being hit in the right eye the second time, which was in March, 1955, that the sight in my right eye began going away and the pain developed in my eye and head.

"I see Dr. Posey in his office every Friday and I am to see him this coming Friday.

"I never wore glasses and never injured or had any trouble with my right eye before these accidents of Nov. 1954 and March 1955."

On August 13, 1956, the referee found in favor of claimant and found as a fact that claimant's condition was the result of an accident sustained by claimant on November 4, 1954. The referee also found as a fact that claimant suffered an injury to his right eye while in the course of his employment with defendant on March 10, 1955. From this award both "American" and "Pennsylvania" appealed to the Workmen's Compensation Board. "American" appealed from the referee's finding

that claimant's condition was the result of an accident sustained on November 4, 1954. "Pennsylvania" appealed from the referee's finding of an accident on March 10, 1955. On February 20, 1957 the board amended the referee's 8th finding of fact to read as follows: "8. The loss of claimant's right eye resulted from the accident sustained by claimant on March 10, 1955." and further amended its conclusions of law to impose liability upon "Pennsylvania" and then made an award of compensation to the claimant for the loss of his right eye and directed "Pennsylvania" and "Colonial" to pay to claimant the sum of $32.50 per week from April 19, 1955 for a period of 125 weeks. It also directed payment of the bills for the hospital and medical services incurred within the first 120 days after disability began.

On March 12, 1957 "Pennsylvania" appealed to the court below and excepted to the board's substituted finding of fact. On April 23, 1957 "American" moved to quash the appeal as to it on the theory that it had not received timely notice of the appeal. The court below, on May 17, 1957, sustained the exceptions filed by "Pennsylvania" and remitted the record to the board "for action consistent with this opinion. . . ." "American's" motion to quash the appeal was denied. The claimant and "American" separately appealed to us from the decree of the court below. "Colonial" and "Pennsylvania," appellees, filed a motion to quash claimant's appeal, alleging that the order of the court below is interlocutory. The order of the court below in effect held that the award of the board was not based on legally sufficient evidence. A clear question of law was thus presented to the court below and it was not necessary for that court to remit the record to the board for the entry of an order consistent with its opinion. No additional evidence was required and, therefore, there was no reason for the remission of the record to

the board. All that was required was a formal entry of a new order by the court below entering judgment for "Pennsylvania" and "Colonial" in accordance with its conclusion of law. Where the question is one wholly of law, it is not necessary that the record be remitted for the entry of the only possible order under the court's ruling. Where the court, nevertheless, remits the record for the entry of a modified award, the court's order is final and appealable. *Puskarich v. Puskarich,* 174 Pa. Superior Ct. 581, 582, 583, 102 A. 2d 191. Appellees' motion to quash the appeal as to the claimant is therefore dismissed.

"Colonial" and "Pennsylvania" also filed a motion to quash the appeal of "American" alleging (1) that the order of the court below is interlocutory and (2) that "American" has no status to appeal by reason of the fact that neither the board nor the court below has made any order placing a liability upon "American." The order of the court below is not interlocutory but is a final and appealable order for the reasons hereinabove stated. We do not have to determine whether "American" is a party aggrieved by the decree of the court below. Two appeals were taken to this Court, one by the claimant and one by "American." Both appeals involve the same question. Certainly the claimant is properly here and therefore we may properly pass upon that question.

The only real question involved in this appeal, as in the court below, is "whether the finding of the Board that the claimant has lost the use of his right eye in an accident occurring on March 10, 1955 is supported by substantial, competent evidence. . . ." The board having found for the claimant, the evidence must be viewed in the light most favorable to him and he must be given the benefit of all inferences reasonably deducible therefrom. *Rice v. Public Meat Market,* 166 Pa. Superior Ct.

328, 70 A. 2d 443. Where the findings of the board are supported by legally credible evidence, they are binding upon the court below and upon the Superior Court. *Nelson v. Boro. of Greenville*, 181 Pa. Superior Ct. 488, 124 A. 2d 675.

The court below, in its opinion, said: "The conclusion reached by the Board that the March accident was the disabling one was based entirely on the statement made by Dr. Deck in his letter to American and on a signed statement of the claimant obtained by a representative of American. The contents of Dr. Deck's letter was admissible and competent only for the purpose of discrediting his prior oral testimony and not as substantive evidence of the information contained therein. The letter did not and could not establish as a fact that the disabling injury occurred in March 1955, only that the witness had made a statement contradictory to his oral testimony: Gougher v. Hausler, 388 Pa. 160; Zavodnials v. Rose & Son, 297 Pa. 86; Schier v. Melville, 279 Pa. 401." We are in accord that self-impeaching evidence from one not a party in interest has no substantive value. In addition to the cases above cited, see also the opinions of this Court in *Selden v. Metro. Life Ins. Co.*, 157 Pa. Superior Ct. 500, 507, 508, 509, 43 A. 2d 571; and *Copello v. New Shawmut Mining Co.*, 179 Pa. Superior Ct. 227, 231, 232, 116 A. 2d 104. Therefore, the court below was correct in its conclusion that the letter of Dr. Deck of June 5, 1955 could only be used to impeach him. The board, as the fact finding body, could find that his oral testimony before the referee, to the effect that the injury was caused by the accident which happened November 4, 1954, was not true. The doctor being a witness and not a party in interest, the board was not empowered, however, to find that his written statement in the letter of June 5, 1955, to the effect that the injury was caused by the accident on

March 21 (agreed to be March 10), 1955, was truthful. This could not be used as substantive evidence to prove the causal relation between the accident of March 10, 1955 and the subsequent injury resulting in the removal of the eye. This means that there is no medical testimony in the case to prove a compensable accident. Dr. Deck's testimony as to the accident of November 4, 1954 being removed and the board being unable to use his written statement as to the date of the accident being March 10, 1955, his testimony on this subject is nil. Dr. Lombard did not testify on the subject and Dr. Posey said that he was unable to give an opinion.

We cannot, however, agree with the conclusion of the court below as to the testimony of the claimant, Henry Leftwrich. What Chief Justice JONES said in *Gougher v. Hansler,* 388 Pa. 160, 166, 130 A. 2d 150, is particularly applicable to the present case: "But, in the case of a party to the proceeding, a prior statement by him inconsistent with his claim or testimony at trial, while it too has the effect of impeaching his credibility, is also admissible as an admission against interest and, as such, constitutes substantive proof of the truth of the matter therein contained. Its probative worth, of course, depends on its nature and the circumstance under which it was made. . . . Standing uncontroverted, such admissions, when clear and unequivocal, may properly be used to support a finding of fact: . . . ." Dr. Posey testified that the claimant, in giving him a history, stated that he was struck in the right eye with a foreign body while feeding an aluminum drier in November; that he was seen by Dr. Deck approximately one week later; that his right eye stayed sore; that the vision of the right eye was normal prior to the accident (meaning the first accident). Counsel for "American," at the last hearing, offered in evidence without objection the statement made by claimant on May 20, 1955 in

which he said: "After Dr. Deck cleaned my eye out on Nov. 4, 1954 my eye felt good and was all right and did not bother me at all and I did not lose any time from work." Then he went on to describe what happened in March 1955. These two statements are inconsistent. Either his eye felt good and was all right from November 1954 until March 10, 1955 or it was sore. The board, as the fact finding body, the claimant being a party in interest, had the right to find that the claimant's eye was all right until the second accident on March 10, 1955. This could be considered as substantive evidence by the board as it was an admission by the claimant against his interest, in relation to "American." Certainly "American" had the right to offer the statement of May 20, 1955 to impeach the testimony that claimant's eye was sore. Not only could the evidence be used to impeach claimant but it could be used as substantive evidence, as to the relevant matter in issue, to determine which accident was the cause of the injury. This evidence brought the case within the principle of law that where the injuries are so immediate and directly, or naturally and probably, the result of an accident, the board, as the fact finding body, may be permitted to so find even in the entire absence of expert opinion. *Mohr v. Desimone and Sayers,* 110 Pa. Superior Ct. 44, 49, 167 A. 504; *Dell v. State Workmen's Ins. Fund,* 118 Pa. Superior Ct. 541, 544, 179 A. 889; *Hager v. Bethlehem Mines Corp.,* 183 Pa. Superior Ct. 498, 501, 133 A. 2d 567. In the *Dell* case, the claimant was able to work and had no trouble with his right eye prior to the accident which occurred on November 27, 1928. After the injury there was continual pain and gradual loss of vision. The claimant suffered no other eye injury and had no disease thereof which causes loss of sight. In the *Dell* case the claimant returned to work for three or four months, during which time the sight of his eye be-

came so defective that he could not continue (the left eye having been destroyed in 1921 as the result of a shooting accident), the loss of vision progressing steadily until almost total loss of sight resulted. In the present case, taking the evidence and the inferences therefrom most favorably for the claimant, the board could find: that claimant had an injury to his right eye on November 4, 1954; that shortly thereafter the eye felt good and claimant was able to work every day from then on until March 10, 1955, approximately four months later; that on March 10, 1955 he suffered a second accident to the right eye in the same way in which he had suffered the first accident; that he was employed by the same employer on both dates and had been so employed for approximately three and one-half years prior to the second accident; that immediately after the second accident he reported to his superior and was referred to a doctor; he visited the doctor the same day and continued under the care of the doctors from then until the removal of his eye on April 21, 1955, approximately six weeks after the second accident and five and one-half months after the first accident; that he lost his sight in the right eye sometime between March 10, 1955 and April 21, 1955, when his eye was removed to relieve him of intense pain; that he had continuous pain and increasing trouble with his right eye from the time of the second accident down to the time when the eye was removed. All of us are of the opinion that medical testimony was not necessary in this case in order to establish a causal connection between the accident of March 10, 1955 and the injury which resulted in the removal of the eye on April 21, 1955.

There was sufficient credible evidence to support the finding of the board and the action of the court below in remitting the record to the board for further action was in error.

Having disposed of the case as above, it becomes unnecessary for us to consider the question raised by the exceptions filed in the motion of "American" to quash the appeal as to it in the court below. Assuming but not deciding the correctness of "American's" position, the action of the court below would be harmless error. *Kracoski v. Bernice White Ash Coal Co.*, 183 Pa. Superior Ct. 155, 162, 163, 130 A. 2d 190.

Judgment is reversed and the record is remitted to the court below with directions to enter judgment in accordance with the award of the board entered as of February 20, 1957.