Cohen, Appellant, *v.* Doubleday & Company, Inc.

Argued September 17, 1959. Before GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., and HIRT, J., absent).

*Maurice S. Strauss,* for appellant.

*Frank R. Ambler,* for appellee.

OPINION BY WOODSIDE, J., November 11, 1959:

The only question in this workmen's compensation case is whether the claimant was entitled to payments for total or partial disability while he was receiving commissions for services rendered to his employer during a period from approximately May 1953 to September 1956. The referee found he was partially disabled during this period and allowed him $21.25 per week compensation. The board found he was totally disabled and allowed $30 per week compensation. The Court of Common Pleas of Montgomery County reversed the board and remitted the record.

The claimant, Joseph J. Cohen, was employed by Doubleday & Company, Inc. to sell books on commission, and received average weekly wages of $281.85. On June 23, 1952, while operating his automobile in the course of his employment, the claimant suffered a fractured skull in a head-on collision.

Under an agreement, the claimant was paid compensation for total disability to February 23, 1953. The defendant filed a petition to terminate as of February 24, 1953. The claimant filed an answer denying that he had recovered, and alleging that he suffered permanent *partial* disability. Because of a third party settlement the hearing on this petition was postponed, and no further compensation was paid by the insurance carrier pending exhaustion of the third party settlement credits. On November 15, 1956, the claimant filed a petition for review of the agreement alleging *permanent* total disability since the accident and exhaustion of the third party settlement credits.

The defendant presented no evidence at the hearing. It was established from the claimant's medical testimony, that he suffered a permanent brain injury which caused "a defect in reasoning and a very superficial insight into his predicament, social economics and his own mental state." It was clear from his own testimony, and that of his wife, that his memory and thinking processes were seriously deficient.

When asked about the claimant's ability to work, his physician testified, "If he was assigned to a sitting —or to a certain job which would just require repeatative movements—he can write; he can add numbers. He can complete an act which is directed or directive, by telling him to do something; but there is no assurance that he would remain on that assignment for the eight hours . . . He is not reliable."

In May of 1953, the claimant returned to his employment. Because of his mental condition he was unable to perform the work alone and his wife accompanied him wherever he went, and materially assisted him in selling the books. Although he required assistance, he *was* employed and *did* perform a service. He, and not his wife, was the employe, and *he* received the

commissions. The exact amount of commissions paid him is not clearly set forth in the record, but it is alleged to have been $28,000 from 1953 to 1957. These were commissions, not for services previously rendered, but for services rendered subsequent to the accident.

After hearing the evidence, the referee concluded that the claimant was partially, but not totally, disabled during the period he was receiving these substantial commissions from his employer.

The board, however, concluded that his disability was total during all of the time since the accident. It stated that "the work performed during this period was done under [the wife's] guidance and direction." It reasoned that the claimant could handle only a special job, light of effort and responsibility, and that the burden was upon the defendant to show that such a job was within reach, and that the defendant failed to meet this burden.

The board is the final fact finding body, and neither the court below nor we can set aside its findings of fact unless there was a capricious disregard of competent evidence. *Paulin v. Williams & Co., Inc.,* 122 Pa. Superior Ct. 462, 466, 186 A. 415 (1936); *Walker v. Aluminum Company of America,* 185 Pa. Superior Ct. 355, 359, 138 A. 2d 197 (1958). If, however, the board errs in applying the law to facts about which there is no serious dispute, it is the duty of the court to set aside the order of the board and properly apply the law to the facts. *Lee v. McMinn Industries, Inc.,* 167 Pa. Superior Ct. 501, 508, 76 A. 2d 493 (1950); *Dydo Unemployment Compensation Case,* 189 Pa. Superior Ct. 286, 290, 291, 150 A. 2d 591 (1959).

The rule of law applicable to this case is clear and well established. It was recognized by the board, but not properly applied to the undisputed facts. The rule was stated by this Court as early as 1932 in *Consona v. R. E. Coulborn & Co.,* 104 Pa. Superior Ct. 170, 172,

173, 158 A. 300. The Supreme Court stated it recently and most colorfully in an opinion by Justice MUS-MANNO, in the following language: "Where the injured person can handle only a specially-created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of everyday economics) the burden is on the defendant-employer to show that such a job is in fact within reach. If proof of that fact is not presented, the claimant then is entitled to a finding of total disability." *Unora v. Glen Alden Coal Co.,* 377 Pa. 7, 13, 104 A. 2d 104 (1954). See also *Cunningham v. Guerrina,* 188 Pa. Superior Ct. 288, 291, 146 A. 318 (1958), and *Naughton v. Kettl,* 154 Pa. Superior Ct. 318, 321, 35 A. 2d 527 (1944).

Here the *employer* created a job specially tailored for the claimant, and for such services as he was able to perform, paid him wages far in excess of the maximum workmen's compensation for which the employer would have been liable.

The job was "in fact within reach." The claimant had the job. The defendant gave it to him. The board erred in ignoring this fact, and the court below properly reversed.

The evidence does not show that the wages were wholly unearned. Within his limited capacities, the claimant rendered services which were of value to his employer and for which he was paid by his employer. See *Hughes v. H. Kellogg & Sons,* 139 Pa. Superior Ct. 580, 583, 13 A. 2d 98 (1940).

In distinguishing between two classes of disability this Court said: "The first includes persons who have sustained accidental injuries, but are capable of steadily performing certain types of light work. It is presumed that such work is available, and that one can procure it. In those circumstances a claimant is entitled to compensation for partial disability. The

second class embraces those who are not able unin-
terruptedly to do even light work owing to their physi-
cal limitations due to accidental injuries. If suitable
work is available for such a person it is incumbent
upon the defendant to show that fact, otherwise a
claimant is entitled to total disability." *Earley v.
Phila. & Reading C. & I. Co.,* 144 Pa. Superior Ct. 301,
305, 19 A. 2d 615 (1941).

The court below found that the claimant was to-
tally disabled from June 23, 1952 to May 1953, par-
tially disabled from May 1953 to September 1956 and
totally disabled thereafter, and should receive work-
men's compensation accordingly. The record does not
show how much was paid to the claimant in wages by
his employer between May, 1953 and September 1956.
As Judge FORREST said, "This will be material in the
event that the claimant was only partially disabled.
If so, it will be necessary to determine to what extent
the partial disability affected his earning power. The
record should be remitted for the purpose of deter-
mining the quantum of the disability, as to which the
amount of the employer's payments during the period
of partial disability may be relevant."

The court below properly disposed of another con-
tention of the appellee in the following language: "The
employer contends that the claimant should be denied
the benefits of the Act because he 'retired' as of Janu-
ary, 1957 and is being paid $8,000 per year under a
retirement policy. This contention is unmeritorious.
The Workmen's Compensation Act of June 2, 1915, sec.
204, as last amended by the Act of June 21, 1939, P. L.
520, sec. 1, 77 PS 71, provides: 'The receipt of benefits
from any association, society, or fund shall not bar
. . . the recovery of compensation . . .' "

The appellee moved to quash this appeal on the
ground the order of the court below was interlocutory.
Ordinarily, when the court below orders the record to

be remitted to the board for additional testimony, the order is not appealable, but under the circumstances of this case, where the court below set aside the award of total disability during the period in dispute and directed the entry of an order of partial disability, we are of the opinion that the order may be appealed to this Court. See *Leftwrich v. Colonial Alum. Sm. Corp.*, 184 Pa. Superior Ct. 622, 629, 136 A. 2d 182 (1957).

The appellee contends that the claimant's allegation of *partial* disability in his answer to the termination petition estops and precludes him from subsequently claiming continuous total disability since the accident. Although this allegation by the claimant was a matter for serious consideration by the board in determining the facts, it did not, of itself, preclude the board's finding the disability to be total as alleged by the claimant in his petition filed subsequent to the answer. *Thatcher v. Weinstein*, 154 Pa. Superior Ct. 368, 373, 35 A. 2d 549 (1944).

Order affirmed.