## Stever v. Rea & Derick

*Samuel H. Stewart* and *R. Merle Heffner*, for plaintiff.

*A. Lynn Corcelius, John M. Fitzpatrick* and *Joseph R. Thompson*, for defendant.

SNYDER, J. (Fifty-Seventh Judicial District, Specially Presiding), March 18, 1965.—Joseph Stever was injured on May 18, 1939, as the result of an accident while working within the course of his employment with defendant. He suffered contusions of the head with extradural hemorrhage as a result of which he was totally disabled.

On July 10, 1939, the Bureau of Workmen's Compensation approved an agreement between the parties, providing for compensation payments at the total disability rate of $18 per week beginning as of May 25, 1939. On December 7, 1948, defendant filed a petition to modify the agreement on the ground that claimant was then able to engage in, and had for some time been engaged in, activity of gainful nature, and his disability had changed from total to partial. After a hearing, the referee on April 20, 1949, made these findings of fact, among others:

"Sixth: That as a result of the accident of May 18, 1939, the claimant suffered a paralysis of the left side of his body; he suffered from a post-concussional syndrome; he became moody and melancholy; he was confined to his bed for approximately six weeks; he suffered

from convulsions until September of 1944; he became weak physically; he suffered muscular twitching and became unconscious from time to time until September of 1944; he developed a back ache and dull headache; he suffered with cold feet when he went to bed; he suffered periods of mental depression; he developed difficulty with his bowels, requiring the habitual use of enemas; he frequently refused to eat and became emotionally unstable, being subject to frequent crying spells, and the claimant has not performed any work for profit or gain since his injury.

"Seventh: That during the summer of 1948 the claimant became especially ill, refusing to go out of the house, during which period he hid himself from time to time in the attic, stating that he thought people were folowing him; his attitude became that of a child and he was in bed for approximately three weeks, during which time he cried frequently without cause; his talk became incoherent at times and frequently he would refuse to talk to his family. The claimant is able to sleep only five to five and one-half hours per night and complains of a dull headache and back ache across his lumbar region upon awaking in the morning; the claimant suffers from weakness and fatigue. On January 11, 1949, the claimant was still suffering from a post-concussional syndrome, having a memory defect, impaired judgment and considerable mental deterioration. He has continued to suffer from emotional disturbances and out-bursts and he suffers from mental incapacity. His mental condition is such that he would be an irresponsible individual in a responsible occupation, and, while there is a possibility that the claimant may regain his emotional stability, this is uncertain and the time when that will happen is questionable and has not yet arrived.

"Eighth: That on September 30, 1948, the wife of the claimant purchased a chicken farm and moved with the claimant to said farm, which was purchased in an effort

by claimant's wife to prevent a complete mental collapse on the part of the claimant. The responsibility for taking charge of the chicken farm has been assumed by claimant's wife. The claimant is permitted to work when he feels like working and not to work at his pleasure. The claimant's wife employs other men two or three days per week to work on the chicken farm. Since moving to the chicken farm the melancholy condition of the claimant has improved. No profit has been realized from the operation of the chicken farm. The purchase of the chicken farm was handled by the claimant's wife who advanced the cash money on the purchase; the claimant's wife handles all financial transactions and keeps all records of the operation on the farm, and she writes and signs all checks. The claimant has been confined to his bed on two occasions since September 30, 1948, and, while his emotional condition has improved, he continues to cry over minor problems, and your Referee finds as a fact that the claimant is still totally disabled."

The referee concluded that defendant was not entitled to modification of the agreement for the reason that claimant was still totally disabled as a result of the injury of May 18, 1939, dismissed the petition, and ordered defendant to continue payment of the sum of $18 per week to the end of the 500-week period, and thereafter at the rate of $30 per month so long as the disability of claimant remained unchanged. This order was unappealed from, and defendant continued to make weekly payments of $18 until claimant had received 500 weeks of weekly benefits and thereafter $30 monthly until April 12, 1962.

On May 10, 1962, defendant petitioned for the termination of compensation payments, alleging that claimant was no longer totally disabled as of December 31, 1953, and claiming $3,000 overpayment. After hearing, the referee found, inter alia:

"Seventh: That since December 31, 1953, the claimant has actively engaged in the operation of a chicken farm, said activities including the driving of his car, over a territory from Somerset, Pennsylvania to New Jersey and surrounding areas in order to contact customers for eggs and chickens.

"Eighth: That the claimant is no longer totally disabled as a result of his accidental injury of May 18, 1939, and any disability suffered by the claimant resulting from the said accidental injury is only partial in character following December 31, 1953."

And ordered that compensation payments be terminated as of December 31, 1953, and granted to defendant insurance carrier a credit for the amount of compensation paid to claimant at the rate of $30 per month from January 1, 1954, to April 12, 1962, against any future payments that may become due in the case.

Upon appeal by claimant, the Workmen's Compensation Board vacated the referee's seventh and eighth findings of fact, his conclusions of law and order and, in lieu thereof, substituted the following findings of fact:

"Seventh: That since September 30, 1948, claimant and his wife have been the owners of a poultry farm and hatchery from which they both derive income, but there is no competent evidence that the profit from operating the poultry farm and hatchery was almost entirely the direct result of claimant's personal management and endeavor.

"Eighth: That claimant continues to be totally disabled as a result of his accidental injury of May 18, 1939 and there is no competent evidence that his total disability has terminated or has become partial in character and extent."

The board concluded that defendant was not entitled to have the payments terminated, dismissed the petition and ordered defendant "to pay compensation to the claimant at the rate of $30 per month from April 13,

1962, until such time as claimant's disability shall cease or change in extent within the provisions of the Workmen's Compensation Act."

Defendant has filed this appeal from the decision of the board, alleging general exceptions to its findings and conclusion.

It is well established that whether or not a claimant is totally disabled is a question of fact for the workmen's compensation authorities. Findings of fact made by the board are conclusive and cannot be disturbed on appeal, if supported by competent and substantial evidence in the record sufficient to sustain the findings: Rohner v. Fox Products, 164 Pa. Superior Ct. 610; Symons v. National Electric Products, Inc., 30 D. & C. 2d 112. Upon appeal, it is the duty of the court to review the evidence to determine whether the board's findings are supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty but the court may not weigh the evidence and substitute its judgment for that of the board.

Total disability agreed to by the parties is presumed to continue unless and until competent examination and testimony disclose otherwise; the burden of proving that claimant's disability has ceased altogether or become partial is upon the employer. Where the decision of the board is against the party having the burden of proof, the question before the appellate court is whether the board's findings are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of the competent evidence: Fox v. American News Company, 190 Pa. Superior Ct. 74; Doheny v. City Stores, 201 Pa. Superior Ct. 566.

The record discloses that the original injury sustained by claimant on May 18, 1939, consisted of contusions of the head with extradural hemorrhage. It was agreed that this injury produced total disability. On April 20, 1949, after a hearing on a petition by the

employer to modify the agreement on the ground that claimant was able to engage in activity of a gainful nature, the referee found that claimant had suffered a paralysis of the left side of his body as a result of the accident; that he suffered from convulsions until 1944; that he became unconscious from time to time; that he suffered from postconcussional syndrome, having a memory defect, impaired judgment and considerable mental deterioration; that his mental condition was such that he would be an irresponsible individual in a responsible occupation. The referee further found that on September 30, 1948, the wife of claimant purchased a chicken farm and with claimant moved to the farm in an effort to prevent a mental collapse on the part of claimant and for the purpose of trying to rehabilitate him. The wife handled all of the financial transactions, kept all of the records and employed help when necessary. Claimant worked when he felt like it.

The only witnesses produced at the hearing on the latest petition were claimant and his wife. The latter testified that, upon the purchase of the farm, she gave up her regular employment as a registered nurse and devoted all of her time to the development of the chicken business. She, with the help of her young son, did practically all of work connected with it. She kept all of the records, graded and helped pack the eggs, booked all orders, handled all financial transactions and was present at, and supervised all deliveries of their products in the areas where they were sold. Claimant drove their car in making deliveries and contacting potential buyers and sometimes assisted in grading eggs, when he felt able to do so. Claimant testified that his activities around the farm had not changed since the hearing in 1948.

Defendant claims that the gross income and net revenue of the poultry business as shown by the income tax reports for the years 1956 to 1961, inclusive, indi-

cate that claimant had substantial gainful employment and an earning capacity. The highest gross revenue for those years was $61,975.66 and the lowest, $41,737.10. The highest net revenue was $2,485.15 and the lowest a loss of $4,712.13. We believe the law applicable to these facts is found in the general rule enunciated in Clingan v. Fairchance Lumber Company, 166 Pa. Superior Ct. 331, which provides that profits from a business are not to be considered as earnings and cannot be accepted as a measure of loss of earning power, unless they are almost entirely the direct result of personal management and endeavor. There is ample evidence to show that the profits were due to the joint efforts of the family and largely under the supervision and management of the wife, and not the result of claimant's management and endeavor.

The employer contends that this aspect of the case is ruled by Cohen v. Doubleday and Company, 191 Pa. Superior Ct. 106. We do not agree with that contention. In that case, after a period of total disability, claimant's employer created a job especially tailored for him, and, for such services as he was able to perform, paid him wages far in excess of the maximum workmen's compensation for which the employer would have been liable. The job consisted of selling books on a commission basis. Because of his condition, he was unable to perform the work alone and his wife accompanied him and materially assisted him. His commissions from 1953 to 1957 amounted to $28,000. The board found that total disability continued during this time. It was quite apparent that he was employed and did perform a service for which he received commissions of a large amount and the court so found in reversing the board. This case is readily distinguishable on its facts from the case at bar.

The factual situation in the Clingan v. Fairchance Lumber Company case, supra, is somewhat similar

to the present case. There, after suffering total disability, the claimant bought a grocery store, which was operated from the start by his wife and children and subsequently with the assistance of two paid employes. Claimant was the owner and manager of the store. At times he waited on trade, did some meat cutting and assisted with the bookkeeping. On occasion, he drove a car to wholesalers for stock. The business showed a profit of $150 per month in its first year, and a net income of $3,134.41, in its second year. The court refused to terminate an open agreement for total disability on the ground that the operation of the store was a family affair and represented the combined earnings of claimant, his wife and four daughters. The court stated that the testimony did not tend to establish that the profits of the business were the result of claimant's management or his efforts, and there was no other evidence of his ability to earn an income. We believe the facts of the case before us are even more persuasive than those of the Clingan case.

Defendant also contends that claimant alleged that he had virtually recovered from his 1939 injury sometime in 1953, in a law suit growing out of an automobile accident in which claimant was injured in the year 1957. Defendant produced an excerpt from a deposition given by claimant in connection with that case. In answer to the question, "Will you tell us what change there has been in that since the accident, meaning the automobile accident," claimant said, "Well, I had practically recovered from the convulsions up until then. 1953 was the last convulsion that I had; since this accident, I have had five or six. My wife says they are not convulsions. I black out, but she says I don't have any bodytwisting." We are unable to see how defendant could reasonably construe this statement into an admission that claimant had virtually recovered from the original injury of 1939. He simply said that he had

practically recovered from his convulsions by 1953. He did not say he had recovered from his original injury.

The court is of the opinion that defendant has wholly failed to sustain the burden of proof necessary to justify a termination of compensation payments in this case. The board's findings are supported by more than substantial, uncontroverted and competent evidence. It has not abused its discretion based upon the law and the evidence. Its decision should be affirmed; hence, the following:

ORDER

Now, March 18, 1965, for the reasons above stated, the appeal is dismissed and the order of the Workmen's Compensation Board, directing defendants, Rea and Derick and Liberty Mutual Insurance Company, to pay compensation to claimant, Joseph M. Stever, at the rate of $30 per month from April 13, 1962, said payments to continue until such time as claimant's disability shall cease or change in extent within the provisions of The Workmen's Compensation Act, is affirmed, and the board's substituted findings of fact and conclusions of law are also affirmed.