## Butler *v.* United States Steel Corporation, Appellant.

Argued April 13, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

510

*Robert M. Keener*, with him *Sayers, King & Keener*, for appellant.

*Myron W. Warman*, with him *E. D. Brown* and *Glen Toothman*, for appellee.

OPINION BY WATKINS, J., June 17, 1965:

This is an appeal under the Occupational Disease Act of June 21, 1939, P. L. 566, as amended, 77 PS §1201, from an order by which the Court of Common Pleas of Greene County dismissed the appeal of the defendant-appellant, United States Steel Corporation, from an award of benefits to the claimant-appellee, John W. Butler, by the Workmen's Compensation Board.

The claimant was employed by the appellant in various mines from 1915 until August of 1959. He then retired at the age of sixty-four years six months, to accept a miner's welfare pension and in anticipation of his entitlement to social security within six months. There is no question raised as to the exposure or his disability as the result of anthracosilicosis. The appellant claims he was totally disabled as a result of the disease on November 10, 1959; and the claimant fixes the date as June 9, 1962. The claim petition was filed on July 12, 1962.

Anthracosilicosis benefits, unlike workmen's compensation benefits, are not payable for partial disability due to the disease but are payable only on proof of total disability or death caused by the disease: §301 of the Occupational Disease Act, 77 PS §1401(e). The claimant must be totally disabled to qualify for benefits. Notice must be given of the disability to the em-

ployer under the Act by the employee or someone on his behalf, within twenty-one days after the compensable disability begins: §311 of the Occupational Disease Act, 77 PS §1411. All claims are barred unless a petition is filed within sixteen months after compensable disability begins: §315 of the Occupational Disease Act, 77 PS §1415.

So the question before us is whether or not the claimant's petition filed on July 12, 1962 is timely under the Act. The appellant admits that the one hundred and twenty-day limitation and the sixteen month limitation begin to run from the date the employee is disabled and definitely knows he is totally disabled from anthracosilicosis. *Ciabattoni v. Birdsboro St. F. & M. Co.*, 386 Pa. 179, 125 A. 2d 365 (1956); *Sierzega v. U. S. Steel Corp.*, 204 Pa. Superior Ct. 531, 205 A. 2d 696 (1964); *Roschak v. Vulcan Iron Works*, 157 Pa. Superior Ct. 227, 232, 42 A. 2d 280 (1945).

In the *Ciabattoni* case, supra, at page 182, the Supreme Court said: "Section 315 of the Occupational Disease Act of 1939 is not and, in the circumstances to which it specifically applies, cannot be construed as a legislatively intended statute of repose. The year within which a claim under that Act must be filed runs from the date when the compensable disability, due to the occupational disease, begins and that date is necessarily a variable one depending upon when the pertinent medical diagnosis is competently established to the knowledge of the claimant. . . . The Roschak case was the first time that Section 311 of the Occupational Disease Act had come before an appellate court of this State for interpretation. The employer argued that it should be given the same construction as had uniformly been ascribed to Section 311 of the Workmen's Compensation Act, namely, that the period of limitation for serving notice of the claim was mandatory and not extendable. But, the Superior Court, noting the marked

difference between the two Acts in respect of the character of the circumstances to which the period of limitation was made applicable, held that the period within which a compensation claimant, under the Occupational Disease Act, must give notice to his employer as required by Section 311 of that Act begins to run 'from the time the employee is disabled and definitely knows he is disabled by the occupational disease.' "

The referee found as a fact that: "Sixth: That from the testimony of record your Referee believes and finds as a fact that the claimant is totally and permanently disabled from anthracosilicosis contracted during his exposure to an occupational hazard while employed for the said defendant and that claimant's disability commenced June 9, 1962." The board affirmed the referee holding that, "We are convinced that claimant was not medically advised of his total disability until so informed by Dr. Lebovitz." This date was June 9, 1962. The court below affirmed the board holding that there was sufficient "legally credible evidence" to support the finding of fact that was binding on the reviewing court. This appeal followed.

The appeal raises the same question that was raised below, that is, "Is there sufficient legally competent and substantial evidence to support the Findings of Fact, Conclusions of Law and Award of the Workmen's Compensation Board?"

The only testimony is that of the claimant and his medical expert, Dr. Edward Lebovitz. It is true that the claimant from the year 1936 had been hospitalized and treated for miner's asthma but each time the attending physician gave him written permission to return to work, which he did. At the time he discontinued working his health was poor and he quit because he found the "lugging on" was not worth it. He no longer had to "lug on" in order to eat. But there is no evidence that at this point, if it were necessary,

he couldn't continue working, in other words, he was not totally disabled. He was retiring in order to take the miner's pension in the face of rumors of an anticipated strike and his expectation to receive social security in six months. He was working on the day he quit and was certainly not nearly in the shape that caused him to be hospitalized on prior occasions but from which he recovered and returned to work.

The evidence must be viewed in the light most favorable to the claimant and he must be given the benefit of all inferences, reasonably deducible therefrom and when the findings are supported by legally credible evidence they are binding on this Court. *Leftwrich v. Colonial Alum. Sm. Corp.*, 184 Pa. Superior Ct. 622, 136 A. 2d 182 (1957). The Occupational Disease Act must be liberally construed to effectuate its remedial and humanitarian purposes. *Masouskie v. Hammond Coal Co.*, 172 Pa. Superior Ct. 409, 94 A. 2d 55 (1953). The exact time of the origin of an occupational disease is obscure and its insidious progress is not revealed until after a long interval, when the disability which it creates manifests itself. *DeMascola v. Lancaster*, 200 Pa. Superior Ct. 365, 189 A. 2d 333 (1963).

The claimant in the *Sierzega* case, supra, unlike the instant case, collapsed and obviously became totally disabled on July 1, 1960 which was within the statutory period set forth in §301(c) of the act, 77 PS §1401, as he last worked July 14, 1956. The date of disability was fixed by the collapse but it wasn't until July 1, 1961 that he was medically advised that the disability was the result of anthracosilicosis as well as tuberculosis. The company in the *Sierzega* case, supra, complained that the disability had to be based on the medical testimony which would put him out of the statutory four-year period but we held that: "Where the total disability is a natural and probable result of the occupational disease, the fact finding body may so

find, even in the entire absence of an expert opinion." They did find that his total disability began with his collapse and that the medical testimony verified it so that he was within the four-year period.

In the instant case it was possible for the fact finders to conclude from the testimony of the claimant that he was totally disabled as a result of silicosis on the date of his retirement but they didn't so find. They found that he was retired on that date, and it wasn't until May of 1962 when he entered the Passavant Hospital in Pittsburgh for a skin condition and was referred to a Dr. Edward Lebovitz that he was informed that as of June 9, 1962 he was totally and permanently disabled as a result of anthracosilicosis, pulmonary fibrosis, pulmonary emphysema, with questionable superimposed tuberculosis.

The finders of fact could infer, that although he knew he had miner's asthma, and we are not impressed by the argument of the appellee as to the difference between miner's asthma and anthracosilicosis, he was not totally disabled so as to qualify under the Act. This inference can clearly be drawn from his testimony that although his health was bad he was going to quit for his miner's pension and anticipated social security rather than "lug on". If he knew he was totally disabled as a result of his known miner's asthma, in addition to seeking his miner's pension he could have immediately filed for occupational disease benefits but it wasn't until June 9, 1962 when he was advised by Dr. Lebovitz that he was totally disabled because of a combination of diseases, including anthracosilicosis, that he was in a position to file his claim. The doctor further testified that his condition was not one he could diagnose himself.

The determination of the date the statute of limitations begins to run depends on the board's finding as to the date of total disability. June 9, 1962 was deter-

mined by the board to be the date of total disability so that the petition of the claimant was within the period. The finding is supported by competent evidence and is binding on this reviewing court.

Order affirmed.