## McKinney Manufacturing Corp., et al. *v.* Straub, et al.

80

Argued April 3, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Henry R. Van Deusen, Jr.,* with him *L. R. Van Deusen* and *Van Deusen & Van Deusen,* for appellants.

*John W. Straub,* appellee, for himself.

Opinion by Judge Rogers, May 24, 1973:

The McKinney Manufacturing Corporation and its insurance carrier, the Pennsylvania Manufacturers' Association Insurance Company, have appealed from an order of the Workmen's Compensation Appeal Board sustaining a referee's award of compensation to John W. Straub.

Straub injured his back on November 11, 1969 in the course of his employment as a production worker with McKinney. The parties entered into an agreement under which claimant was paid compensation for total disability from November 12, 1969 to December 2, 1969. Straub executed a final receipt on December 12, 1969, reciting his ability to return to work without any disability or loss of earning power; but on February 3, 1970 he filed a Petition To Set Aside The Fi-

nal Receipt, alleging continued disability. The referee set aside the final receipt based upon his finding that the claimant was still totally disabled at the time it was executed. The referee further found that the claimant was totally disabled until February 2, 1970; that claimant's disability changed from total to 50 percent partial beginning February 3, 1970, and, that all disability ceased on March 23, 1970. He concluded, consistent with these findings, that the compensation agreement should be modified to provide for compensation for partial disability as of February 3, 1970, and terminated as of March 23, 1970.

By undisputed testimony at the several hearings it was established that the union of which the claimant was a member struck the employer's industrial plant on December 2, 1969 and that all production ceased on that day and did not resume until March 24, 1970; that the carrier's physician saw the claimant on December 2, 1969 and formed the opinion that the claimant was still disabled but could do light work; that the carrier's physician informed the employer's industrial nurse that the claimant could do light work; that the industrial nurse informed the industrial relations manager of this fact; that the claimant would have been offered light work at his usual pay, in accordance with an established policy of his employer, but was not offered such because there was no production activity at the plant due to the strike; and that the claimant was paid weekly the sum of $40 by his union in strike benefits.

The claimant consulted, among other physicians, a chiropractor who treated him from November 11, 1969 until May 8, 1970, and whose opinion it was that the claimant remained totally disabled until February 3, 1970; that after that date he was 50 percent disabled; and that all disability ceased on March 23, 1970.

The employer presents three questions for our consideration. None has merit: "1. Is the employer obli-

gated to continue to pay total disability when claimant has been ordered to return to light work at no loss of pay, but claimant refused to return to work because of the strike of the company's employees?"

This question does not state the facts of the case. The claimant was not ordered to return to work. The carrier's physician in his own words "discharged him to light work."[1] Not only did the employer not order the claimant to return to light work, it never even communicated with him; and for the good reason that it had no work. The Pennsylvania Workmen's Compensation Act provides for compensation for loss of earning power. Section 306(b) of the Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §512. Often forgotten or overlooked is the fundamental premise that when the employer and the employee accept the provisions of the Act their relations become contractual and the employee receives the right to compensation under the statute. The statute gives no indication that voluntary strike activity is to be considered a relevant or appropriate factor to be considered in the determination of loss of earning power. *Michael v. Roadway Express, Inc.*, 211 Pa. Superior Ct. 238, 235 A. 2d 627 (1967). Even incarceration for a criminal offense will not work a forfeiture. *Stevenson v. Westmoreland Coal Co.*, 146 Pa. Superior Ct. 32, 21 A. 2d 468 (1941), *aff'd*, 344 Pa. 561, 26 A. 2d 199 (1942). We need not, however, decide hypothetical cases. The employer here offered the claimant no work.

"2. . . . is the employer entitled to credit on any compensation payments due for union distribution in payment of picket duty by claimant during the period of alleged disability?"

---

[1] This testimony is not consistent with a signed report of the same physician, dated December 3, 1969, which states that in the doctor's opinion the claimant would be able to resume his regular work on December 3, 1969.

Again the question misstates the facts. The claimant was not paid for picket duty; he received strike benefits. While there is some suggestion in the record that the payment of such benefits was usually conditioned on doing picket duty, there is also evidence that the claimant received his benefits without serving by a special ruling of his union. In any event, strike benefits, however conditioned, are not earnings. Section 204 of the Act, 77 P.S. §71, provides that "[t]he receipt of benefits from any association, society, or fund shall not bar . . . the recovery of compensation . . . ." *See also Cohen v. Doubleday & Co., Inc.*, 191 Pa. Superior Ct. 106, 155 A. 2d 378 (1959).

"3. In view of the divergent testimony of claimant's medical witness, a chiropractor, and that of defendant's medical witness, a medical doctor, are the parties not entitled to an impartial medical examination of claimant, and his impartial testimony?"

The chiropractor testified wholly within his area of competence and the compensation authorities accepted his opinion. Chiropractors are competent to testify as experts concerning matters within the scope of the profession and practice of chiropractic medicine. Annot., 52 A.L.R. 2d 1384 (1957). It was, therefore, for the compensation authorities to resolve equally competent medical testimony and this it did. *Scott and Statesman Ins. Co. v. DeAngelis*, 3 Pa. Commonwealth Ct. 168, 281 A. 2d 172 (1971). Further, the only matter in dispute was the duration of total and partial disability and the authorities had and could have accepted the claimant's own testimony which was consistent with that of his doctor.

### ORDER

And now, to wit, this 24th day of May, 1973, the order of the Workmen's Compensation Appeal Board is

affirmed; judgment is hereby entered in favor of John W. Straub, claimant and against McKinney Manufacturing Corp. and Pennsylvania Manufacturers' Association Insurance Co., defendants, for compensation at the rate of $60.00 per week from December 3, 1969 to February 2, 1970, inclusive, and at the rate of $31.77 per week from February 3, 1970 to March 22, 1970, inclusive, with compensation to terminate on March 23, 1970, together with interest at the rate of six percent (6%) per annum on deferred installments from the due date thereof; and the defendants are further directed to pay the following medical and chiropractic expenses:

    Dr. Peter W. Shorten ................ $347.00
    Dr. Joseph E. Moylan .............. $ 42.00