Lowe *v*. American Radiator & Standard Sanitary Corporation, Appellant.

138

Argued November 8, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Sidney J. Watts,* with him *Kennedy Smith* and *Baker, Watts & Woods,* for appellant.

*Murray J. Jordan,* with him *Fred J. Jordan* and *Richard F. Jones,* for appellee.

OPINION BY WOODSIDE, J., April 18, 1955:

This is an appeal from the County Court of Allegheny County affirming the award of compensation made by the Workmen's Compensation Board under The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566 as amended.

The decision depends upon the meaning of "date of disability" contained in section 301(d) of the Act, 77 PS §1401(d).

The claimant was employed as a sand blaster by the defendant company from April 13, 1939 to December 26, 1946 with some interruptions, including one of eleven months while he was in the military service.

During his employment with defendant company he was exposed to a silica hazard and acquired silicosis. In December of 1946 he learned that he was suffering from the effects of the disease, and felt the necessity of obtaining an outdoor job where he could be in the fresh air. On December 26 he quit his sandblasting job. He was then able to do light work, but was told by his physician to "take a little rest." At that time he was disabled to the extent that he could no longer work in an occupation with a silica hazard, but was required to obtain outdoor employment.

On January 3, 1947 claimant's wife on his behalf gave notice to the defendant company that he was partially disabled from silicosis. Claimant thereafter took light work as a hotel doorman and as a cab driver. After July 10, 1949 he was unable to continue working because of his physical condition. He was admitted to the Leech Farm Tuberculosis Hospital September 12, 1949, and in November was told by Dr. K. I. Fetterhoff that he was suffering from silicotuberculosis and was totally disabled. The doctor's testimony was that he was totally and permanently disabled from July 10, 1949.

He filed the petition in this case on December 12, 1949. On February 23, 1951, still in his thirties, he died from silico-tuberculosis. His wife was substituted as claimant in this case, and brought a claim in her own right which by stipulation will be determined by the final disposition of this case.

Prior to his death claimant testified in this case. The facts set forth above are not disputed and further reference to the testimony is not necessary.

Section 301(d), supra, provides: "Compensation for silicosis or anthraco-silicosis, and asbestosis, shall be paid only when it is shown that the employe has had an aggregate employment of at least four years in the Commonwealth of Pennsylvania, during a period of eight years next preceding the date of *disability*, in an occupation having a silica or asbestos hazard." (Emphasis added)

It was stipulated that deceased had been employed by defendant, admittedly in a silica hazard, for 25.7 months from April 13, 1939 to July 10, 1941 and 33.2 months from July 10, 1941 to December 26, 1946.

Therefore if the eight year period referred to in the above quoted provision of the law is calculated back from July 10, 1949, the date of total disability, the claimant did not work in that period the required four years in an occupation having a silica hazard, but if the eight year period is calculated back from December 26, 1946, when he quit working for defendant company because of partial disability, he did work in that period the required four years in an occupation having a silica hazard.

It is to be noted that under The Occupational Disease Act compensation is not paid for partial disability, but only for total disability. See §301(e) of the act, 77 PS §1401(e).

Therefore, argues the appellant, the word "disability" in section 301(d) can relate only to total disability. The appellee contends that such an interpretation is reading the word "total" into the statute. The word "disability", she says, means any disability, and partial disability is "disability" just the same as total disability is "disability." Therefore, she says, under the facts of this case disability began December 26, 1946, when her late husband was forced to quit his job with defendant company because of partial disability.

The issue is thus narrow, if not easy.

Rules of statutory construction are to aid us in ascertaining and effectuating the intention of the legislature. These rules are limited in number, easy to find, but difficult to apply.

When the words of a law are clear and free from all ambiguity, we may not disregard them, but when the words are not explicit, the intention of the legislature may be ascertained by considering among other matters the occasion and necessity for the law, the object to be attained, and the consequences of a particular interpretation. Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551.

In sub-section (c) of section 301, supra, is the following: "Wherever *compensable disability* or death is mentioned as a cause for compensation under this act, it shall mean only *compensable disability* or death resulting from occupational disease and occurring within three years after the date of his last employment in such occupation or industry."

In sub-section (e) of the above section is the following: "Compensation shall not be payable for *partial disability* due to silicosis . . . Compensation shall be payable . . . for *total disability* or death . . ." (Emphasis supplied in both paragraphs)

We note from the paragraphs before and after subsection (d) that the legislature modified disability with "compensable", "partial" and "total". Thus in writing the section it used one of these adjectives when it meant "partial" or "total" or "compensable." Its failure to use any such term before disability in sub-section (d) is presumed to be for a reason. Thus it is fair to assume that the term was not limited as in subsections (c) and (e) but was intended to refer to partial as well as total disability.

It is argued, not entirely without merit, that the legislature having used "disability" without modifying it in section 315 as well as in section 301(d) it must be given the same meaning in both sections, and that if we interpret it to include "partial" disability in section 301(d) we must interpret it to mean "partial" disability in section 315.

Section 315 provides as follows: "In cases of disability all claims for compensation shall be forever barred, unless, within one year after the disability begins, the parties shall have agreed upon the compensation payable . . . or . . . one of the parties shall have filed a petition . . ."

Of course to hold "disability" as used in section 315 to mean "partial" rather than "compensable" disability would be absurd, impossible of execution and unreasonable,[1] as the statute of limitation would then start to run, and indeed often expire, before the right to bring the action would arise.

The answer to the argument is that modifying "disability" when used some places in the act and not when used at others is one, but only one of the matters to be considered, when determining the intent of the legis-

---

[1] See Statutory Construction Act of May 28, 1937, Sec. 52(1), 46 PS §552.

lature. In section 315 there can be no doubt that the legislature intended "disability" to mean "compensable" disability whether it modified "disability" or not, but in section 301(d) there is substantial doubt as to what the legislature intended.

Where there is substantial doubt concerning the intent of the legislature, it is our duty to adopt a rule of liberal construction as a guide in order to effectuate the remedial purpose of the act: *Toffalori v. Donatelli Granite Co.,* 157 Pa. Superior Ct. 311, 43 A. 2d 584 (1945); *Uditsky v. Krakovitz,* 133 Pa. Superior Ct. 186, 2 A. 2d 525 (1938).

In this connection it is well to note that by reason of The Pennsylvania Occupational Disease Act, the employe lost his common law rights to sue in tort for damages for both total and partial disability. *Moffett v. Harbison-Walker Refractories Company,* 339 Pa. 112, 14 A. 2d 111 (1940); *Agostin v. Pittsburgh Steel Foundry Corp.,* 354 Pa. 543, 47 A. 2d 680 (1946).

The appellant suggests that the four out of eight year provision was to furnish the employer reliable means of knowing when his compensation obligations are at an end. In so arguing he ignores sections 301(c) and 315, supra, which contain the provisions which tell the employer when his compensation obligations are at an end.

There are no appellate cases directly in point. A number of cases have been cited by both appellants and appellees to support their contentions. From some of these can be found reasoning and from some language that seems to support the appellant[2] and from others

---

[2] *Mihalik v. Lattimer Coal Corporation,* 162 Pa. Superior Ct. 450, 58 A. 2d 368 (1948); *Holahan v. Bergen Coal Co.,* 164 Pa. Superior Ct. 177, 63 A. 2d 504 (1949); *Jaloneck v. Jarecki Manufacturing Co. et al.,* 157 Pa. Superior Ct. 609, 43 A. 2d 430 (1945).

reasoning and language that seems to support the appellee.[3] Since none of these opinions appear to have been written with the precise point in mind their language and reasoning are not particularly helpful in the determination of this case.

The appellant further contends that the claimant's deceased husband failed to give timely notice of his total disability.

Section 311 of The Pennsylvania Occupational Disease Act, 77 PS §1411, provides that notice must be given to the employer liable for compensation within 90 days after the beginning of disability.

The deceased quit his employment on December 26, 1946 and gave notice to his employer on or about January 3, 1947 that he was partially disabled from silicosis. He did no work after July 10, 1949. The doctor says he was totally disabled by silicosis at that time, but the doctor did not then know it. X-rays taken September 19, 1949 and a diagnosis November 1, 1949 caused the physician to conclude that the disability was caused by silicosis and was total, and he thereafter so advised his patient. The claim was filed within 90 days of both the aforesaid dates.

Under these circumstances legal notice, as required by the act, was given. See *Roschak v. Vulcan Iron Works,* 157 Pa. Superior Ct. 227, 42 A. 2d 280 (1945); *Valent v. Berwind-White Coal Mining Co.,* 172 Pa. Superior Ct. 305, 94 A. 2d 197 (1953); *Masouskie v. Hammond Coal Co.,* 172 Pa. Superior Ct. 409, 94 A. 2d 55 (1953).

---

[3] *Anderson v. Schroeder Monumental Works,* 159 Pa. Superior Ct. 620, 49 A. 2d 631 (1946); *McIntyre v. E. J. Lavino & Co.,* 344 Pa. 163, 25 A. 2d 163 (1942); *Pekorofsky v. Glen Alden Coal Co.,* 171 Pa. Superior Ct. 97, 89 A. 2d 890 (1952); *Gaydosh v. Richmond Radiator Co.,* 164 Pa. Superior Ct. 154, 63 A. 2d 502 (1949); *Agostin v. Pittsburgh Steel Foundry Corp.,* 354 Pa. 543, 47 A. 2d 680 (1946).

The deceased in this case worked for four out of eight years in an occupation having a silica hazard. As a result he acquired silicosis. When he discovered it he withdrew from further exposure to the hazard and promptly notified his employer of his partial disability. Thereafter, although fatally ill, he continued to do such work as he could. Within three years of his last employment in the silica hazard he became totally disabled, gave legal notice thereof to his employer, and filed his claim.

Under the act he is entitled to compensation.

Judgment affirmed.