399 A.2d 119

**Catherine M. BLEY, Widow of Walter Leroy Bley, Deceased, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY.**

Supreme Court of Pennsylvania.

Argued Jan. 8, 1979.

Decided March 16, 1979.

Richard C. Tinucci, Media, Cronin, Emuryan & Roger D. Michael Emuryan, Folsom, for appellant.

Mary Ellen Krober, Asst. Atty. Gen., Harrisburg, for appellee.

Before EAGEN, C. J., and ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

■ On April 22, 1971, appellant's husband, a voluntary fireman in the Collingdale Fire Company for over twelve years, responded with other members of said fire company to a fire. While fighting this fire, appellant's husband collapsed and he subsequently was pronounced dead on arrival at a local hospital. The cause of death was a coronary occlusion brought on by exposure to fire and by the excitement and extreme exertion of fighting a fire.

Appellant filed a claim for benefits for herself as surviving widow and her four children under The Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, No. 284, § 101 et seq., *as amended*, 77 P.S. § 1201 et seq. (1978–79 Supp.) (hereinafter referred to as "the Act"), alleging that her husband's death was caused by an "occupational disease". Following a hearing, a referee awarded the requested compensation which award was affirmed by the Workmen's Compensation Appeal Board. The Delaware County Court of Common Pleas affirmed the Board's decision and upon further appeal, the Commonwealth Court reversed the Court of Common Pleas' decision, holding that volunteer firemen are not entitled to compensation under the Act. *Commonwealth v. Bley*, 28 Pa.Cmwlth. 342, 368 A.2d 872 (1977). We reverse. Volunteer firemen are entitled to compensation under the Act.

In construing a statute, we are governed by the Statutory Construction Act of 1972, Act of December 6, 1972, No. 290, § 3 et seq., 1 Pa.C.S.A. 1501 et seq. (1978–79 Supp.) which provides, among other things, that "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." § 1921(a); "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." § 1921(b); and section 1921(c) provides that if "the words of the statute are not explicit, the intention of the General Assembly may be

ascertained by considering, among other matters: . . . (3) The mischief to be remedied . . ." and "(5) The former law, if any, including other statutes upon the same or similar subjects."

The relevant sections of the Pennsylvania Occupational Disease Act (the Act) are Sections 1201 and 1208(*o*).

Section 1201 provides that the Act "shall apply to disabilities and deaths caused by occupational disease as defined in this act, resulting from employment within this Commonwealth, irrespective of the place where the contract of hiring was made, renewed, or extended, and shall not apply to any such disabilities and deaths resulting from employment outside of the Commonwealth."

Section 1208 provides in pertinent part:

"The term 'occupational disease' as used in this act, shall mean only the following diseases:"

There then follows a list of diseases and occupations numbered subsections (a) through (*o*). Our concern is with subsection (*o*) of section 1208 which provides:

"Diseases of the heart and lungs, resulting in either temporary or permanent disability or death after *four years or more of service in firefighting* for the benefit and safety of the public, caused by extreme overexertion in times of stress or danger or by exposure to heat, smoke fumes or gases, or arising directly out of the employment of any such fireman. The Commonwealth shall pay the full amount of compensation for the disability under the clause." (Emphasis supplied.)

■ There is no doubt that the deceased had "*four years or more of service in firefighting* for the benefit of the public" and that he died in a manner set forth in the statute [§ 1208(*o*)]. The Commonwealth contends, however, that the language of section 1201 which provides " . . . deaths caused by occupational diseases . . . resulting from *employment* within this Commonwealth . . . " and the language of section 1208(*o*) which provides "caused by extreme overexertion in times of stress or danger or by expo-

sure to heat, smoke, fumes or gases, or arising directly out of the *employment* of any such fireman" means that for a fireman to recover under this Act, he must have been in a *paid* employment situation. Thus, continues the Commonwealth, as decedent was a volunteer, he was not in an *employment* situation and hence, was not covered by the Act. This argument fails because the word *"employment"* as used in the Act refers to the manner of death as opposed to the relationship of the fireman to those he serves or is answerable to. This is so as to preclude a fireman from recovering benefits from a fire that has nothing to do with his area of service (fireman's house burns down and he dies as a result thereof while sleeping or a fireman dies while fighting a fire in another state or a fireman dies while viewing a movie when the theater burns down).

Our interpretation is further supported by the fact that prior to 1965, Section 1208(*o*) provided:

"Diseases of the heart and lung, resulting in death after *four years or more of service in the full time salaried occupation of firefighting* for the safety of the public caused by extreme overexertion . . . ." (Emphasis supplied.)

In 1965, section 1208(*o*) was amended [Act of December 17, 1965. P.L. 1121, § 1, 77 P.S. § 1208(*o*) (1978–79 Supp.)] by the legislature to delete the words "the full time salaried occupation of" and now read as set forth *supra.* Thus, the legislature removed the requirement of a firefighter being a full-time employee and a salaried or paid employee in order to recover under the Act.

█ Additionally, we are aware, just as the legislature was aware when they enacted the aforesaid deletion, that firefighting, whether paid or voluntary, is an extremely hazardous occupation. Firemen risk their lives for us, the citizens. We work, sleep and go about our business and pleasure in a relative degree of comfort because we know that our firemen are willing to take this risk to protect us and our loved ones. In interpreting this Act, it is rather inconceivable that the legislature did not want to give all

firemen an equal degree of comfort; that is, a knowledge that if they should die in the line of duty, their loved ones will be compensated in some manner. We adopt the language of the Superior Court in *Butler v. United States Steel Corp.*, 205 Pa.Super. 508, 211 A.2d 35 (1965)—"The Occupational Disease Act must be liberally construed to effectuate its remedial and humanitarian purposes." *See,* 1 Pa.C.S.A. 1928(c).

Lastly, the Commonwealth contends that to allow recovery in cases such as this may threaten the financial integrity of the Act. [Citing *Herman v. Kandrat Coal Co.*, 205 Pa.Super. 117, 208 A.2d 51 (1965)]. No evidence of such a threat has been submitted in this case. We note, however, that if all municipalities converted from a volunteer fire department to a "full time salaried" fire department, taxes would have to be raised substantially.

Reversed.

O'BRIEN, J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a concurring opinion.

NIX, J., filed a concurring opinion in which MANDERINO, J., joins.

EAGEN, C. J., concurred in the result.

ROBERTS, Justice, concurring.

I believe that the referee rightfully awarded compensation, that the Board correctly affirmed the award and that the court of common pleas properly sustained the action of the referee and Board. I therefore agree with the result reached by the majority.

NIX, Justice, concurring.

While I concur in the result reached by the majority, I do so for reasons other than the reasons advanced in that opinion.

The issue in this case is whether a volunteer fireman is covered so as to be entitled to the benefits afforded by the Occupational Disease Act. 77 P.S. § 1201 et seq. Act of June 21, 1939, P.L. 566, as amended, 77 P.S. § 1201 et seq. The Commonwealth Court found that "volunteer firemen do not qualify as employees as that term is defined within ['the Act'] . . . ." *Commonwealth v. Bley,* 28 Pa.Cmwlth. 342, 343, 368 A.2d 872, 873 (1977).

Section 101 the jurisdictional section of the Act, states, *inter alia,* that the Act "shall apply to disabilities and deaths caused by occupational disease as defined in this Act, resulting from employment within this Commonwealth, irrespective of the place where the *contract* of hiring was made . . . ." Act of June 21, 1939, P.L. 566, as amended 77 P.S. § 1201 (Emphasis added). The term "employment" which is used in section 101 above is never defined in the Act. Section 103 of the Act defines "employer" to be "synonymous with master . . . ." 77 P.S. § 1203. Section 104 of the Act provides *inter alia* :

"The term 'employe', as used in this act, is declared to be *synonymous with servant,* and *includes all natural persons who perform services,* except agricultural services or domestic services performed in a private home *for another for a valuable consideration,* exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer and exclusive of persons to whom articles or materials are given out to be made up, cleaned, washed, altered, ornamented, finished, or repaired, or adapted for sale, in the worker's own home, or on other premises not under the control or management of the employer."

Act of June 21, 1939, supra, as amended February 28, 1956, P.L. (1955) 1095, § 1, 77 P.S. § 1204 (Emphasis added). At this point it is significant to point out that an ambiguity exists insofar as Section 101 of the Act employs the terms, "employment" and "contract of hiring," (which may be interpreted to require pecuniary compensation), while Section 104 of the Act equates the generic term, "employe,"

with the generic term, "servant," and states that the generic term shall *include* those who perform services "for valuable consideration . . . " It is possible to read section 104 as intended by the legislature to mean that the term "employe" includes those who perform services *without* compensation as well. See Restatement, Second of Agency, § 16 (a master-servant relationship can exist despite the fact that it is not based on consideration). The majority opinion is absent any reference to section 104, which, when compared with the term "employment" in section 101, produces the ambiguity.

The majority's interpretation of the statutory term, "employment" is questionable. Obviously, the word "employment" refers to the relationship which exists between an "employer" (as defined by section 103) and an "employe" (as defined by section 104). The critical question is whether the Act requires an employe member of the employment relationship to be compensated. The statutory language is unclear and ambiguous and creates substantial doubt as to the intent of the legislature. I am unable to determine the ultimate question whether a volunteer fireman was intended to be entitled to the statutory benefits without resort to principles of statutory construction.

"The Occupational Disease Act must be liberally construed to effectuate its remedial and humanitarian purposes." *Butler v. United States Steel Corp.,* 205 Pa.Super. 508, 513, 211 A.2d 35, 37 (1965). Furthermore, it has been said that "Where there is substantial doubt concerning the intent of the legislature it is our duty to adopt a rule of liberal construction as a guide in order to effectuate the remedial purpose of the Act." *Lowe v. Am. Radiator . & St. San. Corp.,* 178 Pa.Super. 137, 143, 113 A.2d 330, 333 (1955).[1]

---

1. My interpretation is further supported by the deletion of the language, "full time salaried occupation of . . . " from section 108(*o*) of the Act:

"The courts have declared that the mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the origi-

Therefore, in light of the remedial purpose to be achieved by the Occupational Disease Act,[2] I believe we are required to interpret the statutory term, "employment" as not being restricted to relationships based on valuable consideration.

MANDERINO, J., joins this opinion.

nal act is presumed to indicate a change in legal rights. The legislature is presumed to know the prior construction of terms in the original act, and an amendment substituting a new term or phrase for one previously construed indicates that the judicial or executive construction of the former term or phrase did not correspond with the legislative intent and a different interpretation should be given the new term or phrase. Thus, in interpreting an amendatory act there is a presumption of change in legal rights. This is a rule peculiar to amendments and other acts purporting to change the existing statutory law."
Sutherland, Statutory Construction § 22.30 (4th Ed. 1972) (footnotes omitted). *See Commonwealth v. Lowe Coal Co.,* 296 Pa. 359, 365–66, 145 A. 916 (1929); *Nemitz v. Air Serv. International,* 7 Pa. Cmwlth. 373, 379, 298 A.2d 654, 657 (1922). *See generally,* 1 Pa.C.S.A. § 1953 (Supp. 1978–79).

2. The majority mentions many laudatory policy reasons for extending benefits to volunteer firemen. While I agree that firefighting "is an extremely hazardous occupation" and that those performing this function are deserving of every consideration, that fact alone would not justify recovery. The determination of policy is exclusively within the province of the legislature. *See Mt. Lebanon v. County Bd. of Elections of Allegheny County,* 470 Pa. 317, 368 A.2d 648 (1977); *Mayhugh v. Coon,* 460 Pa. 128, 331 A.2d 452 (1975) (the function of the Court is to interpret legislative enactments and not to promulgate them).