**BOROUGH OF HEIDELBERG and Inservco Insurance Services, Inc., Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SELVA), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Jan. 30, 2006.

Decided March 15, 2006.

Jason A. Rosenberger, Pittsburgh, for petitioners.

Kim Ross Houser, Greensburg, for respondent.

BEFORE: PELLEGRINI, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION By Senior Judge FLAHERTY.

The Borough of Heidelberg and Inservco Legal Services, Inc. (Employer) petitions for review of a decision of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting Claimant's Claim Petition seeking wage loss benefits. We affirm for the reasons set forth below.

At the hearing before the WCJ, Employer stipulated that Rowene Selva (Claimant) was an employee of the Borough of Heidelberg pursuant to Section 601 of the Workers' Compensation Act.[1] Employer also stipulated that Claimant sustained a disabling injury in the nature of a right heel fracture while actively engaged in her duties as a volunteer emergency medical technician (EMT) on October 17, 2003. Due to the fact that Claimant was unemployed at the time of the injury, Employer stipulated that the only issue before the WCJ was whether Claimant was entitled to wage loss benefits.[2]

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1031.

2. Although Employer's position is that it does not owe Claimant wage loss benefits, Employer did file a "medical only" Notice of Compensation Payable.

At the hearing before the WCJ, Claimant testified that she volunteered as an emergency medical technician (EMT) but that it has been thirty-two years since she has held a job that paid her wages. (R.R. at 21a). Additionally, Claimant testified that she receives old-age social security benefits and that she was receiving those benefits at the time of her work injury. (R.R. at 20a). However, when she started receiving her social security benefits, Claimant did not consider herself removed from the workforce. (R.R. at 21a). When asked whether she considered herself done with paid employment, Claimant answered: "I don't know how to answer that. Not if I had to be." (R.R. at 22a). When asked he she had any intention to work anywhere for wages, Claimant responded: "Not right at this time." (R.R. at 24a).

By decision dated November 29, 2004, the WCJ found that Claimant is entitled to the presumption in Section 601(b) of the Act that her wages were at least equal to the statewide average weekly wage. In Finding of Fact No. 6(e), the WCJ stated that:

> This Judge does not find as persuasive the Employer's argument that Claimant had voluntarily retired from the workforce prior to her work injury, and therefore is not entitled to wage loss benefits. In so concluding, this Judge initially notes that she finds claimant's employment status outside the volunteer fire company is irrelevant. However, this Judge also notes that claimant specifically testified that she did not consider herself removed from the workforce. This Judge finds her testimony credible, especially in light of the fact that Claimant continued to work in her position as

an EMT for the Borough of Heidelberg even though she was entitled to Social Security retirement benefits. This Judge further notes that the receipt of Social Security retirement benefits does not totally prohibit claimant from working and therefore, does not find the receipt of the same as indicative of whether claimant has removed herself form the workforce.

Therefore, in Conclusion of Law No. 3, the WCJ concluded that "Claimant has established that she has not voluntarily withdrawn from the workforce." Accordingly, the WCJ granted Claimant's Claim Petition seeking wage loss benefits. Employer appealed to the Board, which affirmed the decision of the WCJ. Employer's appeal to this Court followed.[3]

On appeal, Employer argues that: 1) the WCJ erred by imposing the burden of proof on Employer with respect to whether Claimant had voluntarily withdrawn from the workforce, 2) the WCJ's finding that Claimant has not voluntarily withdrawn from the workforce is not supported by substantial evidence and 3) the WCJ misconstrued Section 601 of the Act as entitling a volunteer to compensation when that volunteer had not worked nor considered working in decades.

 Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa.Cmwlth.1998). In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed

---

**3.** This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

before the factfinder. *Id.* Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party. *Id.* Furthermore, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ. Rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Id.* It is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Id.* As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.* It is with these principles in mind that we consider this challenge.

█ In a claim petition proceeding, the claimant bears the burden of proving that he suffers from a work-related injury that occurred in the course and scope of his employment and that the injury results in a loss of earning power. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)* 535 Pa. 135, 634 A.2d 592 (1993).

Section 601 of the Act provides, in relevant, part, that:

(a) In addition to those persons included within the definition of the word "employe" as defined in section 104, "employe" shall also include:

. . .

(2) all members of volunteer ambulance corps of the various municipalities who shall be and are hereby declared to be employes of such municipality for the purposes of this act who shall be entitled to receive compensation in the case of injuries received while actually engaged as ambulance corpsmen or while going

to or returning from any fire, accident, or other emergency which such volunteer ambulance corps shall attend . . .

. . .

(b) In all cases where an injury which is compensable under the terms of this act is received by an employe as defined in this section, *there is an irrebuttable presumption that his wages shall be at least equal to the Statewide average weekly wage* for the purpose of computing his compensation under sections 306 and 307.

77 P.S. § 1031 (emphasis added).

First, we address Employer's argument that the WCJ erred by imposing the burden of proof on Employer with respect to whether Claimant had voluntarily withdrawn from the workforce. A review of the WCJ's decision reveals that the WCJ concluded that "Claimant has established that she has not voluntarily withdrawn from the workforce" and that the WCJ relied on the testimony of Claimant in making the determination as to whether Claimant removed herself from the workforce. As such, it is clear that the WCJ did not place the burden of proof on Employer.

Second, Employer argues that the fact that the Legislature deleted the words "whether employed, self-employed or unemployed" from Section 601 evidences its intent to restrict its coverage to those who held paid employment. We disagree.

█ Section 601 previously provided that: "In all cases where an injury compensable under the provisions of this act is received by a member of a volunteer ambulance corps . . . *whether employed, self-employed or unemployed,* there is an irrebuttable presumption that his wages shall be at least equal to the Statewide average weekly wage . . ." This section was amended by Section 1 of the Act of No-

vember 26, 1978, P.L. 1328, 77 P.S. § 1031. This amendment deleted the qualifying words "employed, self-employed or unemployed" from the former Section 601. *See Warminster Township v. Workmen's Compensation Appeal Board (Metz)*, 77 Pa. Cmwlth. 155, 465 A.2d 708, 709 n. 3 (Pa. Cmwlth.1983). We reject Employer's contention that this shows that the Legislature intended to restrict the application of Section 601(b). To the contrary, Section 601(b) applies to all "employees" without limitation, and the term "employee" is defined in Section 601(a)(2) as "all members of volunteer ambulance corps of the various municipalities." As member of a volunteer ambulance corps, Claimant is clearly an "employee" and therefore covered by Section 601(b).

Next, Employer argues that the WCJ misconstrued Section 601 of the Act as entitling a volunteer to compensation when that volunteer had not worked nor considered working in decades and that the WCJ's finding that Claimant has not voluntarily withdrawn from the workforce is not supported by substantial evidence.

Employer cites the case of *White Haven Borough v. Workmen's Compensation Appeal Board (Cunningham)*, 92 Pa.Cmwlth. 123, 498 A.2d 1003 (Pa.Cmwlth.1985), in support of its argument that the language of Section 601(b) that "there is an irrebuttable presumption that his wages shall be at least equal to the Statewide average weekly wage" does not mean that a claimant who is an EMT is automatically entitled to benefits. In *White Haven*, this Court stated that:

> We agree with the Board's conclusion, since we view the Legislature's "irrebuttable presumption" language to amount to no more than a computation device for providing what would be fair compensation for a public servant disabled by an injury suffered while serv-

ing as a volunteer in a hazardous occupation devoted to the safety and welfare of the community served.

*Id.* at 1005. Employer cites this passage from *White Haven* in support of its argument that the "irrebuttable" language does not mean that it is irrebuttable that the employee is entitled to wage loss benefits, only that, *if* there is a wage loss, the amount of those lost wages are subject to an irrebuttable presumption.

We disagree with Employer's interpretation of the *White Haven* case. In *White Haven*, the employer appealed the decision of the Board which dismissed its petition to modify the benefits of a claimant who was injured while working as an ambulance attendant. The employer argued that Section 601 was constitutionally defective and that the claimant, whose actual earnings were fifty dollars per week in self-employment, was entitled only to the minimum wage provided in Section 306(a). This Court made the statement that "[w]e agree with the Board's conclusion, since we view the Legislature's "irrebuttable presumption" language to amount to no more than a computation device" in the context of upholding the constitutionality of Section 601. This Court did not state that, *if* there is a wage loss, the amount of those lost wages are subject to an irrebuttable presumption. To the contrary, our discussion later in the *White Haven* opinion supports the conclusion that the Legislature meant to grant volunteer emergency workers wage loss benefits without regard to their actual earnings, if any. Specifically, this Court stated that:

> While the precise constitutional question raised here may be of the first instance, we discern no novelty, as noted by us above and by the Board, in a wage computation formula that reflects a justifiable social purpose. Volunteer firemen have been specifically favored by the

Legislature and the Courts of Pennsylvania. Although volunteers are generally not entitled to benefits under the Pennsylvania Act, volunteer firemen have had workmen's compensation rights at least since 1925. These unpaid public servants are the only firefighters in most of the communities of the Commonwealth.[7]

Recovery for the death of a volunteer fireman was at issue in the case of *Bley v. Com., Dept. of Labor & Industry,* 484 Pa. 365, 399 A.2d 119 (1979), *rev'g* 28 Pa.Cmwlth. 342, 368 A.2d 872 (1977), where Mr. Justice Larsen, speaking for the Supreme Court in support of recovery, stated:

> Additionally, we are aware, just as the legislature was aware when they enacted the aforesaid deletion, that firefighting, whether paid or voluntary, is an extremely hazardous occupation. Firemen risk their lives for us, the citizens. We work, sleep and go about our business and pleasure in a relative degree of comfort because we know that our firemen are willing to take this risk to protect us and our loved ones. In interpreting this Act, it is rather inconceivable that the legislature did not want to give all the firemen an equal degree of comfort; that is, a knowledge that if they should die in the line of duty, their loved ones will be compensated in some manner. We adopt the language of the Superior Court in *Butler v. United States Steel Corp.,* 205 Pa.Super. 508, 211 A.2d 35 (1965)- "The Occupational Disease Act must be liberally construed to effectuate its remedial and humanitarian purposes." See, 1 Pa.C.S.A.1928(c). 484 Pa. at 369–370, 399 A.2d at 121–122.

Since we see in Section 601, as with other provisions for computing a wage *which may not always be directly related to the actual earnings of the injured employee,* what is clearly in a remedial statute a provision that is rationally related to a legitimate government interest, we find no constitutional defect in Section 601 that calls for a ruling by us to strike down the wage provision in that Section.

---

[7] It has been estimated that 80% of all firefighters in this Commonwealth and in the United States are unpaid volunteers.

*Id.* at 1006–1007.

■ We believe it is clear that, by providing in Section 601(b) that "there is an irrebuttable presumption that his wages shall be at least equal to the Statewide average weekly wage", the Legislature, as a matter of public policy, meant to compensate volunteer emergency workers for injuries they suffer while performing their duties without regard to their actual earnings. It is clearly in the public interest to provide a financial safeguard to the good citizens willing to volunteer their time and effort at some risk, at times, if they should suffer an unfortunate injury while in the public service.

Therefore, we conclude that the WCJ and the Board correctly applied Section 601(b) in this case, thus finding that Claimant is entitled to an irrebuttable presumption that her wages were at least equal to the statewide average weekly wage.[4]

---

4. Employer also cites the case of *County of Allegheny (Department of Public Works) v. WCAB (Weis),* 872 A.2d 263 (Pa.Cmwlth.2005) in support of its position that the WCJ erred in concluding that Claimant had not removed herself from the workforce. Because we conclude that Claimant's status as a volunteer member of an ambulance corps entitles her to an irrebuttable presumption regarding her wages, we believe the question of whether or not Claimant had withdraw from the workforce is irrelevant.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, March 15, 2006, the order of the Workers' Compensation Appeal Board docketed at A04–3064 is hereby AFFIRMED.