IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fidelity Contracting, LLC,   :
      Petitioner  :
          :
  v.       : No. 657 C.D. 2020
         : Submitted: September 17, 2021
Workers' Compensation Appeal :
Board (Risbon),    :
      Respondent

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ELLEN CEISLER, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER       FILED: February 15, 2022

   Fidelity Contracting, LLC (Employer) petitions this Court for review of the June 12, 2020 order of the Workers' Compensation Appeal Board (Board), affirming the decision of a workers' compensation judge (WCJ), which awarded Thomas Risbon (Claimant) total disability benefits. The issues before this Court are whether the WCJ's findings were supported by substantial evidence and whether the WCJ issued a reasoned decision, as required by Section 422(a) of the Workers' Compensation Act (Act).[1]

## I. Background

   Following a work injury sustained in August 2017 while employed as an equipment operator and laborer, Claimant filed a claim petition seeking total disability benefits for injuries to his left hip and groin. Certified Record (C.R.), Item No. 2. Claimant alleged that his job duties caused his condition to worsen, requiring

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

multiple surgeries to treat his work injuries. Employer denied the allegations. *Id.*, Item No. 4.

## A. Claimant's Evidence

Claimant testified at a September 18, 2018 deposition that his job duties for Employer included digging trenches, laying sewer and water pipes, installing manholes and storm grates weighing approximately 200 pounds, removing and laying blacktop, carrying 50-80 pound bags of concrete, and operating heavy equipment, including loaders and backhoes. C.R., Item No. 15, Claimant dep., 9/18/18, at 7-9. While lifting a storm grate in August 2017, Claimant heard a popping noise in his back, followed by pain and a warm, burning sensation in his abdomen and left testicle that radiated down his left leg. *Id.* at 11-12. Claimant reported the incident and his symptoms to his supervisor, who suggested that Claimant might have torn a groin muscle. *Id.* at 12, 36. Claimant continued working, despite an increase in his pain symptoms, because he "[did not] know any better[,]" and he needed to pay his bills. *Id.* at 13, 18. He eventually sought treatment with his primary care physician (PCP), who recommended physical therapy, which Claimant attended before or after his shift to avoid missing work. *Id.* at 14-15. Claimant's physical therapy targeted the pain symptoms in his left pelvis, left leg, left groin area, and his lower back. *Id.* at 18. Claimant also treated his pain with prescription medication and steroids. *Id.* When physical therapy failed to relieve Claimant's symptoms, Claimant's PCP referred him to Andrew Frankel, M.D., who took Claimant out of work on February 9, 2018. *Id.* at 17, 19. Dr. Frankel referred Claimant to Susan Sees, M.D., who surgically repaired hernias in Claimant's left groin area on May 16, 2018. *Id.* at 25-26.

2

Claimant received unemployment compensation from the date Dr. Frankel took him out of work through July 4, 2018, and Employer covered the cost of Claimant's medical treatment. *Id.* at 22-23. After July 4, 2018, Employer refused to cover Claimant's medical expenses. *Id.* at 22. Claimant advised that his pain has worsened since the initial August 2017 work incident, and he continues to suffer from pain on the left side of his groin and in his left hip, which radiates up to his lower back and neck and down to his knee. *Id.* at 27. Claimant's treating physicians had not released him to work and he did not feel capable of resuming his pre-injury duties for Employer, as he is unable to stand for more than ten minutes at a time and he is unable to lift anything. *Id.* at 28-29.

Claimant acknowledged during cross-examination that he is able to drive and that he goes to the grocery store when he can, but he performs housework "[as l]ittle as possible." *Id.* at 47-48. He conceded that his complaints were initially limited to his abdomen, left leg and groin, and Dr. Frankel's treatment addressed the pain in his left hip and thigh. *Id.* at 49-50. Claimant maintained, however, that he advised his doctors about the pain in his lower back, and they focused on treating his hernias first. *Id.* at 51.

Claimant also testified live at a hearing before the WCJ on April 15, 2019. By that date, Claimant had undergone a left hip replacement. C.R. Item No. 11, Notes of Testimony (N.T.), 4/15/19, at 18-19. Claimant suffers from pain in both sides, although the pain on the left is worse. *Id.* at 16. Claimant takes prescription pain medication following his left hip replacement, and he receives injections for the pain in his back. *Id.* at 16-19. Claimant related that he suffers from constant pain in his left testicle, as well as pain and tingling that radiates up to his neck and down his left knee to his toes. *Id.* at 22-23. He has not been released to resume his pre-injury job

duties by any of his treating physicians. *Id.* at 23. Claimant does not feel capable of performing those duties, as he cannot lift anything or operate any equipment, and he would "be a debt to [Employer]" *Id.* at 24.

During cross-examination, Claimant acknowledged that he continued to work his full duty job after the August 2017 work injury until February 2018, when Dr. Frankel took him out of work. *Id.* at 26. Claimant advised that he was not instructed to work light duty or to stop working, and he "[did not] want to lose [his] job." *Id.* Claimant denied having any issues with his left hip, leg, or groin, or with his back prior to August 2017. *Id.* at 27. Claimant typically spends his day attending therapy sessions and trying to maintain his home. *Id*. at 30. When his pain is particularly bad, Claimant uses a transcutaneous electrical nerve stimulation unit. *Id.* Claimant lives on a farm, where he takes care of four turkeys and a chicken. *Id.* at 31-32. Claimant's daughter helps him "when she can[,]" and his parents live across the street. *Id.*

Dr. Frankel, a board-certified orthopedic surgeon, testified by deposition on November 1, 2018. C.R., Item No. 16, Frankel dep. at 6. He first treated Claimant on January 25, 2018. *Id.* at 8. At that time, Claimant complained of pain, numbness, and tingling affecting his left side, left hip, and left thigh, which had persisted for approximately six months. *Id.* at 9. Claimant related that the physical nature of his job, which included repetitive heavy lifting and digging ditches, had "beaten him up." *Id.* at 9, 21. Dr. Frankel's physical examination corroborated Claimant's symptoms, as well as "some issues with his spine[,]" although Dr. Frankel's findings with respect to the spine were not localized to any specific area. *Id.* at 10.

As part of his examination, Dr. Frankel reviewed December 18, 2017 x-rays of Claimant's left hip, which revealed early arthritic changes. *Id.* Given the severity

4

of Claimant's pain, Dr. Frankel suspected Claimant suffered a labral tear in his left hip, which he opined could come from a twisting and lifting injury. *Id.* at 11-12. After reviewing a magnetic resonance image (MRI) of Claimant's left hip that documented an iliopsoas strain with hematoma formation, Dr. Frankel took Claimant out of work. *Id.* at 12-13, 16. An April 2, 2018 arthrogram detected the presence of a labral tear in Claimant's left hip, as well as hernias in his right and left groin area. *Id.* at 15. Dr. Frankel stated that the iliopsoas hematoma appeared to have improved. *Id.*

After Claimant complained of increased tingling and pain radiating to his lower back in August 2018, Dr. Frankel ordered an MRI of Claimant's lumbar spine, which revealed a "broad-based disc herniation at L5-S1[,] with severe bilateral neural foraminal narrowing and a grade 1 retrolisthesis[.]" *Id.* at 16-17. During a September 14, 2018 examination, Dr. Frankel discussed with Claimant the possibility that he might need a left hip replacement, in part because the arthritis in his left hip was significant enough to interfere with treatment of his labral tear. *Id.* at 19.

Ultimately, Dr. Frankel diagnosed Claimant with bilateral hernias, a left iliopsoas strain and hematoma, a labral tear to his left hip, left hip osteoarthritis, and an L5-S1 herniation, which Dr. Frankel opined was "likely" caused by Claimant's repetitive heavy lifting at work. *Id.* at 21. Dr. Frankel acknowledged he was not a specialist in general surgery; nevertheless, he related Claimant's bilateral hernias to excessive lifting, as he generally understood that to be a cause of hernias. *Id.* at 19. Regarding the osteoarthritis in Claimant's left hip, Dr. Frankel felt that it was accelerated by the labral tear, which could be caused by heavy lifting and twisting. *Id.* at 22. Dr. Frankel did not believe Claimant had fully recovered from his injuries,

5

and he did not believe Claimant could perform his pre-injury job duties, nor had he been released to do so. *Id.* at 23.

On cross-examination, Dr. Frankel agreed that his initial examination of Claimant's lower back was "relatively normal," and subsequent examinations on July 31, 2018, and September 14, 2018, revealed no objective findings. *Id.* at 25. He also agreed that the need for a total hip replacement can result from wear and tear over the course of years. *Id.* at 38. However, he related that other conditions, such as a labral tear, could cause the sudden deterioration of a hip. *Id.* Although Dr. Frankel did not believe Claimant could return to his pre-injury job, he did believe Claimant could work in some capacity. *Id.* at 39.

### B. Employer's Evidence

Employer presented the deposition testimony of Robert Grob, D.O., and Arnold Baskies, M.D., who each performed an independent medical examination (IME) of Claimant.

Dr. Grob's IME took place on October 18, 2018. C.R., Item No. 18, Grob dep. at 10. At that time, Claimant complained of pain along his left hip, which radiated into his groin and down to his left knee, weakness in his left leg with occasional tingling in his left foot, and pain in his lower back, extending from the middle of his back to his right side. *Id.* at 12-13. Claimant advised that he was injured at work after lifting a storm grate. *Id.* at 10. He felt a pop in his back, followed by pain radiating into his left groin and down to his left ankle. *Id.* Dr. Grob limited his evaluation to Claimant's orthopedic complaints, and he declined to render an opinion regarding any hernias Claimant may have suffered. *Id.* at 19. While Claimant reported his pain averaged a 9 out of 10, Dr. Grob suspected

6

Claimant was magnifying his symptoms, as his subjective complaints were not supported by any positive objective findings. *Id.* at 13-14.

As part of the IME, Dr. Grob reviewed Claimant's medical records, including diagnostic studies. Dr. Grob did not see anything in the diagnostic studies that suggested the presence of an acute injury; rather, they indicated a degenerative process occurring in Claimant's lower back and left hip. *Id*. at 20-21. Dr. Grob found no evidence that Claimant sustained any injuries from the alleged August 2017 work injury, nor did he believe that the work injury aggravated any preexisting degenerative condition Claimant had. *Id.* at 23-24. "[A]t the most," Dr. Grob thought Claimant sustained a left hip strain as a result of that incident. *Id.* at 23-24. He estimated the recovery period for such an injury to be approximately six weeks. *Id.* at 25. Therefore, Dr. Grob opined that Claimant had fully recovered from his left hip strain and Claimant did not require any further medical treatment or work restrictions. *Id.* at 26. Dr. Grob did not disagree with Dr. Frankel's diagnoses, or the treatment he provided; Dr. Grob merely did not relate any of Claimant's conditions to a work injury. *Id.* at 33, 47.

Dr. Baskies examined Claimant on October 23, 2018. C.R., Item No. 19, Baskies dep. at 9. He expressly limited his examination, and resultant medical opinion, to Claimant's bilateral hernias. *Id.* at 13. Based on the history Claimant provided, Dr. Baskies understood that Claimant was injured in August 2017 while lifting a storm grate. *Id.* at 10. Claimant's chief complaints during the October 23, 2018 IME were pain in his left lower back and his left hip. *Id.* at 11. Dr. Baskies reviewed the medical records of Dr. Sees, who surgically repaired Claimant's hernias, and performed a physical examination. *Id.* at 12, 15. Claimant expressed mild left testicular discomfort with palpation. *Id.* at 15. Otherwise, Dr. Baskies

7

found no clinical evidence to suggest the presence of any persistent or recurrent hernia, and he did not believe Claimant required any additional treatment for his bilateral hernias, nor did he require any work restrictions due to that condition. *Id.* at 15, 18. He related that Dr. Sees' post-surgical office notes likewise found no evidence of recurrent hernias. *Id.* at 19. Dr. Baskies did not relate Claimant's bilateral hernias to any work injury. *Id.* at 16.

During cross-examination, Dr. Baskies acknowledged that the report from a July 2, 2018 computed tomography (CT) scan reflected the possible presence of recurrent bilateral hernias. *Id.* at 30. Dr. Baskies noted this finding in his written report, stating that Claimant had not reached maximum medical improvement due to the "radiological suggestion" that Claimant had "persistent hernias in both groins." Baskies dep., Ex. 2 at 5. Regarding the work-related nature of Claimant's hernias, Dr. Baskies conceded that a November 29, 2017 office note from Claimant's PCP indicated that Claimant complained of thigh and groin pain, and he reported having pulled a groin muscle at work three or four months earlier after lifting a "large metal cover" at work. *Id.* at 31. Dr. Baskies agreed that Dr. Sees' records similarly reflected that Claimant developed an acute onset of left groin and thigh pain after lifting something heavy at work. *Id.* at 40.

### C. WCJ Decision

In an August 12, 2019 decision, the WCJ credited Claimant's live testimony, in part based on his personal observation of Claimant's demeanor while testifying. C.R., Item No. 5, WCJ Decision, Finding of Fact (F.F.) No. 7. The WCJ also credited Claimant's efforts to continue working, despite the increase in his symptoms, and Claimant's attempt to avoid missing work by scheduling his physical therapy sessions outside work hours. *Id.* The WCJ credited the testimony of Dr.

8

Frankel over that of Dr. Grob and Dr. Baskies. F.F. No. 8. The WCJ noted that Dr. Frankel was Claimant's treating physician, and his opinions were based on multiple examinations taking place over a period of time. *Id.* Dr. Frankel's testimony was further supported by the findings in Claimant's CT and MRI studies, and consistent with Claimant's credible testimony regarding his ongoing symptoms. *Id.* The WCJ discredited Dr. Grob's opinion that Claimant did not suffer a work injury, given the nature of Claimant's employment and the absence of any prior history of injury or disability. *Id.* Dr. Baskies' opinion that Claimant's bilateral hernias were not work related was similarly rejected, as was his opinion that Claimant had recovered from these injuries, in light of the abnormal CT report from July 2, 2018, and Claimant's credible testimony that he continued to suffer from groin pain. *Id.*

Accordingly, the WCJ found that Claimant suffered work injuries consisting of bilateral hernias, a left iliopsoas strain and hematoma, a labral tear of the left hip, left hip osteoporosis, and a disc herniation at L5-S1, all of which were caused by "repetitive physical labor at work through February 9, 2018." F.F. No. 9. As a result, Claimant was disabled from his pre-injury job with Employer, effective February 9, 2018. *Id.* Claimant had not fully recovered from his work injuries, which required continued medical treatment. *Id.* The WCJ rejected Employer's medical evidence to the extent it conflicted with his findings. *Id.* The WCJ awarded Claimant total disability benefits from February 9, 2018, and ongoing. WCJ Decision at 10. Employer was entitled to a credit for any unemployment compensation benefits Claimant received. *Id.*

Employer appealed to the Board, which affirmed, and Employer filed its petition for review. C.R., Item No. 8. On December 3, 2020, the parties filed a stipulation of facts with this Court, in which they acknowledged the execution of an

October 20, 2020 compromise and release agreement (C&R) that resolved Claimant's right to future wage loss and medical benefits. Stipulation, ¶ 11. The C&R did not affect Employer's petition for review pending with this Court. *Id.*, ¶ 12. Employer previously sought supersedeas from the Board, which it denied in an October 3, 2019 order. *Id.*, ¶ 8. Because Claimant's right to future wage loss and medical benefits was resolved by the C&R, and Employer could seek reimbursement of workers' compensation benefits from the Workmen's Compensation Supersedeas Fund (Supersedeas Fund)[2] should it prevail on the petition for review, Claimant declined to submit a reply brief in the present appeal. *Id.*, ¶ 14.

## II. Issues

Employer argues on appeal that the WCJ's findings of fact are not supported by substantial, competent evidence and that the WCJ failed to issue a reasoned decision, as required by Section 422(a) of the Act.

## III. Discussion

### A. Substantial Evidence

This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 894 A.2d 861, 863 n.3 (Pa. Cmwlth. 2006). Substantial evidence is such relevant evidence that a reasonable person might accept as adequate to support a finding. *City of Philadelphia v. Workers' Comp. Appeal*

---

[2] Section 443(b) of the Act created the Supersedeas Fund for the purpose of reimbursing an employer ordered to pay workers' compensation benefits that are later determined not to be owed. Section 443 was added by the Act of February 8, 1972, P.S. 25, 77 P.S. § 999. An employer will be reimbursed by the Supersedeas Fund if it can demonstrate the following: a supersedeas was requested and denied; compensation payments were continued because of the order denying supersedeas; and the claimant was determined not to be entitled to the compensation paid by the employer. Section 443(a) of the Act, 77 P.S. § 999(a).

*Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011). When performing a substantial evidence analysis, this Court must view the evidence in a light most favorable to the party that prevailed before the factfinder. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prod., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). We must also draw all reasonable inferences deducible from the evidence that supports the factfinder's decision in favor of the prevailing party. *Id.* It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the inquiry before this Court is whether evidence exists to support the findings actually made. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005).

The WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight. *Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 125 (Pa. Cmwlth. 2016). In executing his role as factfinder, the WCJ may accept or reject, in whole or in part, the testimony of any witness, even if that testimony is uncontradicted. *Hoffmaster*, 721 A.2d at 1155. A WCJ's credibility determinations are due substantial deference and may only be overturned if they are "arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render [them] irrational." *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

With these precepts in mind, we turn to Employer's first argument, which attacks the WCJ's finding that Claimant suffered work injuries caused by repetitive physical labor. Employer contends that there is no evidence to suggest that Claimant's job was repetitive in nature or that he sustained any form of cumulative trauma. Rather, Claimant testified that he suffered a work injury in August 2017

11

after lifting a storm grate. Therefore, based on a faulty understanding of the mechanism of Claimant's injury, Employer contends that the WCJ erred in granting Claimant's claim petition.

Employer is correct that Claimant related his injury to the initial August 2017 work incident. However, Claimant also credibly testified that he continued to work, despite an increase in his pain symptoms, because he was never instructed to go on light duty or not to work, he had bills to pay, and he "[did not] want to lose [his] job." Claimant dep. at 13, N.T., at 26. Claimant's job duties unquestionably involved heavy physical labor, such as cutting and removing blacktop, shoveling stone, digging trenches, laying sewer pipe, lifting storm grates and manholes, and carrying bags of concrete. Employer has not disputed Claimant's description of his job duties or denied that Claimant continued to perform these duties for several months after the initial August 2017 work incident, the occurrence of which Employer also does not dispute. From this evidence, which the WCJ credited, we may reasonably deduce that Claimant's work duties consisted of repetitive physical labor. Therefore, to the extent the WCJ's decision relied on a finding that Claimant's job involved repetitive heavy lifting, we discern no error, as substantial evidence exists to support such a finding.

Next, Employer argues that Dr. Frankel's testimony and medical opinions were incompetent and equivocal. In support of its argument, Employer cites Dr. Frankel's "inaccurate" understanding of the mechanism of Claimant's injury, Dr. Frankel's opinion that Claimant's work injury "likely" caused his diagnosed conditions, and Dr. Frankel's admitted lack of expertise in treating hernias. Employer br. at 17.

12

A medical opinion may be rendered incompetent when made by a medical professional who lacks a complete grasp of the medical situation and/or the work incident. *Long v. Workers' Comp. Appeal Bd. (Integrated Health Serv., Inc.)*, 852 A.2d 424, 428 (Pa. Cmwlth. 2004). A medical expert's opinion is not rendered incompetent, however, unless it is *solely* based on inaccurate or false information. *Am. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001). The opinion of a medical expert must be viewed as a whole, and inaccurate information will not defeat an expert's opinion unless it is *solely* dependent on those inaccuracies. *Id.* Moreover, an expert witness may base his opinion on facts of which he has no personal knowledge, provided that those facts are supported by evidence of record. *Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking Corp.)*, 692 A.2d 1062, 1066 (Pa. 1997).

A medical expert's testimony is unequivocal if, after providing a foundation, he testifies that he believes or thinks the facts exist, and the result in question came from the assigned cause. *Bemis v. Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011). The law does not require every utterance from a medical expert to be certain, positive, and without reservation or exception. *Id.* The use of words such as "likely" will not render an expert opinion equivocal provided that the testimony, when read in its entirety, is unequivocal and the witness does not recant the opinion or belief first expressed. *Id.*

We do not agree that Dr. Frankel's opinions were based on an incomplete understanding of Claimant's medical situation or the mechanism of his work injury. As discussed above, substantial evidence exists to support a finding that Claimant's job duties involved repetitive physical labor. When Dr. Frankel first examined Claimant on January 25, 2018, Claimant complained of ongoing pain for the past six

13

months. Dr. Frankel understood that Claimant worked as a laborer and his job duties included lifting heavy objects. He also understood that Claimant continued to work his full-duty job despite his pain symptoms, which he experienced for several months. Claimant advised Dr. Frankel that the heavy lifting at work had "beaten him up." Frankel dep. at 21. Dr. Frankel reviewed the results of Claimant's MRIs and arthrogram, from which he diagnosed Claimant with left hip osteoarthritis, as well as right-sided hernias of a "reasonable size" and a moderately sized left-sided hernia, a labral tear in Claimant's left hip, a left iliopsoas strain and hematoma, and a disc herniation at the L5-S1 level of Claimant's lumbar spine. *Id.* at 15. While Employer disagrees that Claimant's injuries were work-related, it has not questioned the existence of those injuries, or Dr. Frankel's diagnoses.

Based on his review of Claimant's diagnostic studies and his understanding of Claimant's job duties, Dr. Frankel opined that Claimant's labral tear came from heavy labor. While Dr. Frankel acknowledged that he was not a specialist in general surgery, he felt that Claimant's bilateral hernias were caused by heavy lifting, an opinion he based on his generalized medical knowledge. Frankel dep. at 21, 36. Dr. Frankel also causally related Claimant's disc herniation and iliopsoas strain to Claimant's work duties, opining that a causal relationship was "self-evident." Frankel dep. at 21. Dr. Frankel acknowledged that the cause of Claimant's left hip osteoarthritis was more difficult to place, and he recognized that the osteoarthritis may have been preexisting. He opined, however, that labral tears can cause the rapid acceleration of osteoarthritis, and he unequivocally related Claimant's labral tear to his heavy labor work duties. Consequently, Dr. Frankel believed Claimant's left hip osteoarthritis was work-related.

14

We must also reject Employer's argument that Dr. Frankel's testimony and opinions were equivocal. While Dr. Frankel initially opined that Claimant's injuries were "likely" caused by Claimant's repetitive heavy lifting at work, he subsequently explained why he related all of Claimant's injuries to his job duties and he never recanted his belief that Claimant's diagnosed conditions were caused by heavy physical labor at work. *Id.* at 21.

Employer's next argument challenges the WCJ's finding that the August 2017 work incident caused Claimant's L5-S1 disc herniation and bilateral hernias. Employer submits that the evidence demonstrates Claimant did not seek treatment for, or complain of, any lower back condition until July 31, 2018, during an appointment with Dr. Frankel. Employer notes that Dr. Frankel's initial physical examination of Claimant's lower back on January 25, 2018, yielded normal results, as did his subsequent examinations on July 31, 2018, and September 14, 2018. Regarding Claimant's bilateral hernias, Employer argues that Claimant never complained of right-sided pain. As a result, Claimant's right-sided hernias were not work-related. Employer further argues that, because Claimant did not present any medical evidence from the surgeon who treated his hernias, the record does not support a finding that they were caused by Claimant's work duties. Employer dismisses Dr. Frankel's opinion of causation because Dr. Frankel acknowledged that he did not examine or treat Claimant for those injuries. Employer maintains that the only uncontroverted opinion with respect to Claimant's hernias came from Dr. Baskies, who opined that they were not work-related. We reject these arguments.

As to his lower back pain, Claimant testified at his September 18, 2018 deposition that in August 2017, after lifting the storm grate, he felt a "pop" in his lower back followed by a "warm burning sensation" and pain that radiated from his

15

lower back and down his left leg. Claimant dep. at 11-12. He reported the incident to his supervisor, complaining of pain in his groin, hip, back, and leg. *Id.* at 36. Claimant testified that he advised his doctors about the pain in his lower back, who treated his hernias as a priority. Claimant attended physical therapy, which in part treated issues with Claimant's lower back. *Id.* at 16. While Dr. Frankel's treatment primarily addressed Claimant's left hip pain, he did note "some issues" with Claimant's spine at his initial examination on January 25, 2018. Frankel dep. at 10. Dr. Frankel ordered an MRI of Claimant's lumbar spine in August 2018 after Claimant complained of increased tingling and pain radiating to his lower back. The WCJ credited Claimant's and Dr. Frankel's testimony, as well as Dr. Frankel's opinion that Claimant's disc herniation was caused by Claimant's heavy labor job duties.

Regarding Claimant's bilateral hernias, Claimant stated that, following the initial incident in August 2017, he experienced a warm, burning sensation in his abdomen and left testicle. Although he testified that the pain on his left side was worse than the pain on his right, Claimant also related that the pain in his groin intensified and spread to his "lower stomach" "around [his] belly button area." *Id.* at 14; N.T., 4/15/19, at 16. While Dr. Frankel acknowledged that the treatment of hernias was not within his expertise, and he would defer to the surgeon who repaired Claimant's hernias, Dr. Frankel also unequivocally opined that they were caused by heavy lifting at work. The WCJ rejected Dr. Baskies' opinion that Claimant's hernias were not work related, given the physical nature of Claimant's job. He also rejected Dr. Baskies' opinion that Claimant had fully recovered from the bilateral hernias, as Claimant continued to experience groin pain and the abnormal CT report from July 2, 2018, indicated the possible presence of recurrent hernias.

The WCJ is the exclusive arbiter of credibility, and this Court will not overturn his determinations in that regard. Moreover, viewing the evidence in a light most favorable to Claimant, as the party that prevailed before the WCJ, we conclude that substantial evidence supports the WCJ's findings that Claimant's L5-S1 disc herniation and his bilateral hernias were caused by repetitive heavy labor at work.

## B. Reasoned Decision

Section 422(a) of the Act requires the WCJ to issue a "reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions...." 77 P.S. § 834. A decision is "reasoned" if it allows for adequate review by the appellate courts under the applicable review standards. *Acme Mkts., Inc. v. Workers' Comp. Appeal Bd. (Brown)*, 890 A.2d 21 (Pa. Cmwlth. 2006). The purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 196 (Pa. Cmwlth. 2006). The WCJ may not reject uncontroverted evidence without reason, or for an irrational reason, but must identify such evidence and adequately explain the reasons for its rejection. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043 (Pa. 2003).

Employer's argument that the WCJ failed to issue a reasoned decision largely reiterates its prior arguments, citing the lack of evidence demonstrating Claimant had a repetitive job, Claimant's failure to seek treatment for any lower back condition until July 31, 2018, Claimant's failure to present evidence from the surgeon who treated his hernias, and Dr. Baskies' uncontroverted opinion that

Claimant's hernias were not work related. As we have already addressed and dismissed those arguments, we need not revisit them.

The remainder of Employer's reasoned decision argument essentially suggests that the WCJ should have credited the opinions of Dr. Baskies over those expressed by Dr. Frankel. We cannot overturn the WCJ's credibility determinations on that basis. Nor would we, as the WCJ thoroughly explained his reasoning, and this court is not in the position of having to imagine why the WCJ believed Dr. Frankel over Dr. Baskies. Dr. Frankel was deemed credible based on his status as Claimant's treating physician, who examined Claimant on multiple occasions over a period of time. As discussed above, Dr. Baskies' opinion that Claimant's hernias were not work related was rejected in light of the physical nature of Claimant's job, and his opinion that Claimant had fully recovered from his hernias was contradicted by the abnormal CT scan and Claimant's credible testimony that he continued to suffer from groin pain. Therefore, we conclude that the WCJ's decision was sufficiently reasoned, as required by Section 422(a) of the Act.

## IV. Conclusion

The WCJ's findings are supported by substantial evidence and his decision comports with the requirements of Section 422(a) of the Act. Accordingly, we affirm the Board.

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fidelity Contracting, LLC,       :
                Petitioner     :
                          :
      v.                  :  No. 657 C.D. 2020
                          :
Workers' Compensation Appeal  :
Board (Risbon),            :
                Respondent

# **O R D E R**

AND NOW, this 15th day of February, 2022, the June 12, 2020 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge