IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy M. Allison, : 
          Petitioner : 
           : 
          v. : No. 704 C.D. 2017
           : Argued: December 4, 2017
Workers' Compensation Appeal : 
Board (Fisher Auto Parts, Inc.), : 
          Respondent : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: January 12, 2018

Timothy Allison (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) holding that the Workers' Compensation Judge (WCJ) lacked jurisdiction to hear Claimant's appeal of a utilization review determination. In this appeal, we consider whether a WCJ has jurisdiction to review the reasonableness and necessity of Claimant's medical treatment where, as here, Claimant's provider did not provide medical records to the utilization review organization (URO) but a peer review report was nevertheless prepared. We also consider whether the Board violated Claimant's due process rights by denying Claimant a right to appeal the URO determination. For the following reasons, we affirm.

**Background**

On May 24, 2010, while employed by Fisher Auto Parts (Employer), Claimant sustained multiple injuries in a work-related motor vehicle accident. Employer issued a Notice of Compensation Payable (NCP) pursuant to the Workers'

Compensation Act (Act)[1] describing the injury as fractures on the left side of his face, a fractured left eye socket, a displaced fracture of the right clavicle, fractured ribs and a fractured pelvis. By decision dated October 25, 2011, a WCJ amended Claimant's injury to include whiplash and a left shoulder impingement.

On May 8, 2015, Employer filed a request for utilization review of the medical treatment provided to Claimant by Dr. Julie Hoang, M.D., from April 6, 2015, and forward, which included office visits, occipital nerve blocks, trigger point injections and medications. The Bureau of Workers' Compensation assigned Employer's request to Watson Review Services, one of the Bureau's qualified UROs.

The URO requested Dr. Hoang's medical records, but she did not provide them. Nevertheless, the URO assigned the matter to a reviewing physician, Dr. Dennis W. Ivill, M.D., who issued a report. His report stated, in pertinent part, as follows:

> There are no records from the provider under review, Julie Hoang, M.D. However, on 7/14/15 at 3:02 pm I spoke with Dr. Julie Hoang regarding [Claimant]. She stated that [] the only treatment after 4/6/15 was an office visit on 5/1/15, at which time she performed an occipital nerve block, prescribed Lyrica 75 mg 3 times a day, and Robaxin 500 mg 1 twice per day as needed. She recommended ongoing treatment including greater occipital nerve blocks, trigger point injections and medications.

Reproduced Record at 75a (R.R. __). In the "Discussion" section of his report, Dr. Ivill stated:

> *The documentation is not adequate to support the treatment under review.*

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

2

* * *

> There are no records submitted for review from Dr. Julie Hoang either prior to the period under review or during the time period of review. Records from additional providers are not recent. Although I was able to speak with Dr. Hoang regarding [Claimant], it is the main tenet of healthcare that in order to provide treatment, office notes must be maintained to document the subjective complaints, objective findings, assessment, and plan to document the need for any treatment. *There are no medical records from Dr. Hoang documenting [Claimant]'s medical history specific to this provider. Therefore, it is my opinion that office visits from 4/6/15 and continuing (including on 5/1/15), greater occipital nerve blocks from 4/6/15 and continuing (including on 5/1/15), trigger point injections from 4/6/15 and continuing, medications consisting of Lyrica 75 mg 3 times a day and Robaxin 500 mg 1 twice per day as needed from 4/6/15 and continuing (including on 5/1/15), compound cream (ingredients, dose and application frequency unspecified) from 4/6/15 and continuing, and Fioricet (dosage/frequency unspecified) from 4/6/15 and continuing, as provided to [Claimant] by Julie Hoang, M.D. are unreasonable and unnecessary.*

R.R. 76a (emphasis added). Dr. Ivill opined that Dr. Hoang's treatments were neither reasonable nor necessary.

Dr. Ivill reviewed the medical literature with respect to the medications Dr. Hoang prescribed, which he discussed in his report. He noted that Robaxin treats acute pain, as opposed to the chronic pain Claimant experienced. He also stated that Lyrica may be used to treat neuropathic pain, but in this case there was no documentation of Claimant's response to the Lyrica. Fioricet, Dr. Ivill explained, is a combination product for headache treatment, but its efficacy and safety in treating recurrent headaches is unclear, and documentation was unavailable. As to the compound cream, Dr. Ivill noted that there is scant support in the literature for "many of the agents used in compounded pain-relieving analgesics." R.R. 77a. Dr. Ivill

3

explained, "[a]ccording to the literature, any compounded product that contains at least one drug or drug class that is not recommended is not recommended." *Id.*

Dr. Ivill also reviewed the medical literature with respect to Dr. Hoang's other treatments. He found little support for the use of occipital nerve blocks to relieve occipital neuralgia and cervicogenic headaches. Regarding the trigger point injections, Dr. Ivill found "no clear evidence of benefit" in the literature for their use in treating whiplash syndrome or chronic head, neck, shoulder, or back pain. *Id.* Dr. Ivill noted the absence of documentation to support Claimant's need for any of those treatments. Based on the foregoing analysis, Dr. Ivill concluded that Claimant's office visits with Dr. Hoang were unreasonable and unnecessary.

The URO issued Dr. Ivill's report with a utilization review cover sheet noting that Dr. Hoang's treatment was neither reasonable nor necessary. Notably, the URO did not check off the box on the cover sheet that stated that the treatment was unreasonable by reason of Dr. Hoang's "failure to supply records."[2] R.R. 72a. Claimant was provided a copy of this cover sheet as well as Dr. Ivill's report.

Claimant petitioned for review of the URO's determination. Employer moved to dismiss Claimant's petition, arguing that the WCJ lacked jurisdiction because Dr. Hoang had not provided Claimant's medical records to the URO. The WCJ denied Employer's motion because Dr. Ivill had prepared a substantive report on Dr. Hoang's treatments by doing a review of medical literature, which, the WCJ found, "served as the basis for his opinions regarding the reasonableness and

---

[2] The utilization review determination cover sheet provides the following options (boxes) in answering the question of whether the health care reviewed is reasonable and necessary: (1) Yes; (2) Yes in part, no in part; (3) No; and (4) No, pursuant to 34 Pa. Code §127.464 relating to effect of failure of the provider under review to supply records. In the instant case, the URO checked off the third box, "No." R.R. 72a.

4

necessity of Dr. Hoang's services." WCJ Decision, 12/2/2015, at 6. Concluding that the report gave him the basis for a *de novo* review,[3] the WCJ denied Employer's motion to dismiss.

At the hearing, Claimant testified that he began seeing Dr. Hoang in 2012 and that her treatment reduced his pain by 90 percent. Notes of Testimony (N.T.), 01/6/2016, at 11; R.R. 24a. Because of the URO's determination, Claimant has been unable to continue the treatment and, consequently, been left in constant pain. He rated his pain level as six or seven out of ten, mostly on the left side at the base of his neck, radiating into his left shoulder. When Claimant was under Dr. Hoang's treatment, his pain level was reduced to three out of ten.

Claimant submitted a report by Dr. Hoang, dated March 10, 2016, prepared for Claimant's counsel. Therein, Dr. Hoang summarized the treatments Claimant received and opined that they "are medically necessar[y] and medically indicated" for the purposes of "maintenance of quality of life, reduction of symptoms, and ability to work." Certified Record (C.R.), Item 21, Dr. Hoang Narrative, at 1. Without those treatments, Dr. Hoang stated, Claimant "has suffered with daily headaches, severe neck and myofascial pain. His quality of life has also greatly suffered." *Id.* Claimant also provided medical records dated from September 29, 2014, through August 3, 2015, from Parkway Neuroscience and Spine Institute, the practice group through which Dr. Hoang practices.

In further support, Claimant submitted a January 28, 2014, stipulation of the parties, which stated, in pertinent part, as follows:

---

[3] When a petition for review of a utilization review determination comes before a WCJ, the hearing before the WCJ is a *de novo* proceeding where the WCJ is required to consider the report as evidence but is not bound by the report. *See* Section 306(f.1) of the Act, 77 P.S. §531(6)(iv); 34 Pa. Code §127.556.

5

4. The parties stipulate and agree that the medical expenses, attached hereto as Exhibit A, which are the subject matter of a Penalty Petition presently pending in this matter, are charges related to reasonable and necessary treatment in the nature of occipital nerve blocks for Claimant's whiplash condition, which was sustained in the work-related motor vehicle accident in which Claimant was involved on March 24, 2010....

\*\*\*

6. The parties agree that the provisions of this Stipulation resolve the pending Penalty Petition. *Employer will remain responsible for the payment of occipital nerve blocks received by Claimant at Parkway Neuroscience and Spine Institute that are reasonable and necessary and causally related to the treatment of the whiplash condition* that Claimant sustained in the motor vehicle accident that occurred on May 24, 2010, *until such time as that obligation is modified by a Utilization Review Determination*, agreement of the parties, or Decision by a [WCJ].

R.R. 85a-86a (emphasis added).

The WCJ set aside the utilization review determination and held that Dr. Hoang's treatments and services were reasonable and necessary. The WCJ found that the parties had stipulated that occipital nerve blocks were reasonable and necessary to treat Claimant's work-related injury. The WCJ credited Claimant's testimony and accepted "the information from Dr. Hoang as both creditable and persuasive." WCJ Decision, 9/28/2016, at 7; Findings of Fact No. 8. The WCJ explained that he "cannot ignore [the] fact that Dr. Hoang's position as one of Claimant's treating physicians ... places her in a unique relationship with Claimant, allowing her to observe and consider Claimant's condition over time, and ... observe his positive response over this time to the treatment provided[.]" *Id.* The WCJ concluded that Employer failed to "meet the burden of demonstrating the accuracy of the [u]tilization [r]eview [d]etermination." *Id.* at 9.

6

Employer appealed to the Board, which reversed the WCJ. Relying on this Court's decisions in *Stafford v. Workers' Compensation Appeal Board (Advanced Placement Services)*, 933 A.2d 139 (Pa. Cmwlth. 2007), and *Leventakos v. Workers' Compensation Appeal Board (Spyros Painting)*, 82 A.3d 481 (Pa. Cmwlth. 2013), the Board concluded that the WCJ lacked jurisdiction to review the reasonableness and necessity of the medical treatment at issue because Dr. Hoang provided no medical records to the URO, thereby precluding Dr. Ivill from doing a substantive utilization review. Claimant petitioned for this Court's review.[4]

**Appeal**

On appeal, Claimant presents two issues for our consideration. First, he argues that the Board erred in holding that the WCJ lacked jurisdiction to review the reasonableness and necessity of Dr. Hoang's treatment. Despite the fact that Dr. Hoang did not provide Claimant's medical records to the URO, Dr. Ivill nevertheless "performed a substantive review of the merits of the treatment modalities used by Dr. Hoang and cited medical literature in support of his conclusions." Claimant Brief at 10. The "substantive nature of [Dr. Ivill's] review," Claimant argues, distinguishes the instant case from *Stafford* and *Leventakos*. *Id*. at 10-11. Second, Claimant argues that the Board's adjudication violated his procedural due process rights by depriving him of a hearing because he has a property interest in the medical treatment he received from Dr. Hoang.

---

[4] This Court's review of an adjudication of the Board determines whether the necessary findings of fact are supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Compensation Appeal Board (Selva)*, 894 A.2d 861, 863 n.3 (Pa. Cmwlth. 2006).

7

**Analysis**

We begin with a review of the applicable law. Utilization review is the exclusive way for an employer or insurer to challenge the reasonableness or necessity of medical treatment provided to a claimant. Section 306(f.1)(6)(i) of the Act.[5] Upon request for a utilization review, the Department of Labor and Industry (Department) assigns the matter to a URO, which then selects a health care provider in the same or similar specialty as the provider of the treatment under review to conduct a peer review. *Id.* The Department's regulations set forth the procedures for conducting the utilization review. Section 127.464 of Title 34 of the Pennsylvania Code states:

> (a) *If the provider under review fails to mail records to the URO within 30 days of the date of request of the records, the URO shall render a determination that the treatment under review was not reasonable or necessary*, if the conditions set forth in subsection (b) have been met.

---

[5] Section 306(f.1)(6)(i) provides:

> Except in those cases in which a [WCJ] asks for an opinion from peer review under section 420, disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:
>
> (i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The [Department of Labor and Industry] shall authorize utilization review organizations to perform utilization review under this act. Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review. Organizations not authorized by the department may not engage in such utilization review.

77 P.S. §531(6)(i).

8

(b) Before rendering the determination against the provider, a URO shall do the following:

> (1) Determine whether the records were mailed in a timely manner.
>
> (2) Indicate on the determination that the records were requested but not provided.
>
> (3) Adequately document the attempt to obtain records from the provider under review, including a copy of the certified mail return receipt from the request for records.

(c) If the URO renders a determination against the provider under subsection (a), it may not assign the request to a reviewer.

34 Pa. Code §127.464 (emphasis added). This Court has held that the above procedures must be strictly followed.

In *County of Allegheny (John J. Kane Center-Ross) v. Workers' Compensation Appeal Board (Geisler)*, 875 A.2d 1222 (Pa. Cmwlth. 2005), a URO determined that a provider's treatment was neither reasonable nor necessary for the sole reason that the provider did not supply the requested medical records. The claimant appealed to the WCJ, and the WCJ concluded, after an evidentiary hearing, that the provider's treatment was reasonable and necessary. This Court reversed, holding that "if a report by a peer physician is not prepared because the provider has failed to produce medical records to the reviewer, the WCJ lacks jurisdiction to determine the reasonableness and necessity of medical treatment." *Id.* at 1228.

Thereafter, in *Stafford*, 933 A.2d 139, this Court again considered the WCJ's jurisdiction to hear a challenge to a utilization review determination where the provider under review failed to provide medical records to the URO. The differentiating factor in *Stafford* was that, notwithstanding the unavailability of the provider's medical records, the URO assigned the matter to a reviewing physician,

who issued a report concluding that the treatment under review was not reasonable and necessary. However, the reviewing physician's conclusion was based upon the absence of the provider's records, not upon a substantive review of the merits of the treatment. The claimant petitioned for review of the URO's determination, and the WCJ held that he lacked subject matter jurisdiction. This Court affirmed, applying *Geisler*, 875 A.2d 1222.

We held that a URO's determination cannot be reviewed in the absence of a peer review evaluation that is based upon the provider records. In so holding, we noted that Section 127.472 of the Department's regulations requires a reviewer's report to contain, *inter alia*, "a listing of the records reviewed." 34 Pa. Code §127.472.[6] In the absence of the provider records, the reviewer "had no records to review." *Stafford*, 933 A.2d at 142. Accordingly, the WCJ lacked jurisdiction to review the URO's determination.[7]

Here, Dr. Hoang did not produce Claimant's medical records upon their request by the URO. The URO's assignment of the utilization review to a reviewing physician was improper because a substantive review cannot be done without those records. 34 Pa. Code §127.464. Dr. Ivill's evaluation stated, repeatedly, that "[t]he documentation is not adequate to support the treatment under review." R.R. 76a.

---

[6] It provides:

> The written reports of reviewers shall contain, at a minimum, the following elements: a listing of the records reviewed; documentation of any actual or attempted contacts with the provider under review; findings and conclusions; and a detailed explanation of the reasons for the conclusions reached by the reviewer, citing generally accepted treatment protocols and medical literature as appropriate.

34 Pa. Code §127.472.

[7] This Court noted an exception to this rule, which is when a claimant or a provider asserts that medical records were timely provided to the URO in accordance with the URO's request. *Stafford*, 933 A.2d at 143 n.7.

10

Claimant asserts that Dr. Ivill "performed a substantive review" because in his report he also evaluated each treatment. Claimant Brief at 10. Those discussions, however, were based solely upon Dr. Ivill's review of the medical literature. Alternatively, Dr. Ivill concluded that there was insufficient documentation provided to support the necessity for those treatments or Claimant's response to them.

Dr. Ivill spoke with Dr. Hoang regarding the treatment under review before he issued his report. However, an oral account of treatment is not a "record" for purposes of utilization review. *Leventakos*, 82 A.3d at 485 ("a 'record' is something documented, not something remembered."). Nor could Dr. Hoang's March 10, 2016, narrative be considered a "record" because it was prepared after Dr. Ivill issued his report. What is more, Dr. Hoang's March 10, 2016, report, addressed to Claimant's attorney, was prepared for the purpose of litigation, which is not a substitute for Dr. Hoang's contemporaneous notes of treatment. Claimant argues that Dr. Ivill did receive records from Claimant's previous treating doctors, which satisfies Section 127.472 of the Department's regulations, 34 Pa. Code §127.472. These previous treatments, however, were not the ones subject to the utilization review. It is Dr. Hoang who is the "provider under review," and the Department's regulation requires that she supply medical records to the URO. 34 Pa. Code §127.464. In short, because the required medical records were not provided to the URO, the Board properly found that the WCJ lacked jurisdiction to hear Claimant's appeal of the utilization review determination.

Claimant next argues that the Board, by denying his right to a hearing, violated his due process rights because he has an identifiable property interest in the treatment he received from Dr. Hoang. Claimant contends that Employer had stipulated that his occipital nerve block treatments were reasonable and necessary,

11

which gave him "more than a mere expectation … but [] an actual entitlement" to those treatments. Claimant Brief at 16. Employer counters that the medical benefits in the instant case are not "property" because the URO found them unreasonable and unnecessary. We agree with Employer.

Procedural due process requires that one have an identifiable property right or liberty interest. *Pennsylvania Interscholastic Athletic Association, Inc. v. Greater Johnstown School District*, 463 A.2d 1198, 1201 (Pa. Cmwlth. 1983). In *Miller v. Workers' Compensation Appeal Board (Pavex, Inc.)*, 918 A.2d 809 (Pa. Cmwlth. 2007), this Court concluded that a claimant does not have a protected property interest in medical benefits not yet determined to be reasonable and necessary. Here, Claimant contends that Employer stipulated that his occipital nerve block treatments were reasonable and necessary. The stipulation, approved by a WCJ on January 28, 2014, states, in pertinent part, as follows:

> Employer will remain responsible for the *payment of occipital nerve blocks received by Claimant at Parkway Neuroscience and Spine Institute that are reasonable and necessary* and causally related to the treatment of the whiplash condition that Claimant sustained in the motor vehicle accident that occurred on May 24, 2010, until such time as that obligation is modified by a Utilization Review Determination, agreement of the parties, or Decision by a [WCJ].

R.R. 85a-86a (emphasis added). Notably, the term "that are reasonable and necessary" modifies "occipital nerve blocks received by Claimant," which means that Employer was not obligated to pay for all nerve blocks, but only those "that are reasonable and necessary." The stipulation further states that Employer's obligation of payment is subject to modification by a utilization review determination; accordingly, Employer did not agree to remain responsible indefinitely. This is supported by Section 306(f.1)(6)(i) of the Act, which provides that the

12

reasonableness or necessity of all treatment provided by a health care provider may be subject to "prospective, concurrent, or retrospective utilization review." 77 P.S. §531(6)(i). Indeed, the passage of time may affect the reasonableness and necessity of a particular medical treatment, even if the claimant's medical condition has not changed. *Gary v. Workers' Compensation Appeal Board (Philadelphia School District)*, 18 A.3d 1282, 1287 n.7 (Pa. Cmwlth. 2011).

Here, the URO has determined that the treatment Dr. Hoang provided is not reasonable and necessary. Claimant's due process claim is unfounded because he had no identifiable property right to any medical treatment that, by law, has been determined not to be reasonable and necessary.

For all of the foregoing reasons, we affirm the Board's order.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy M. Allison,                               :
                   Petitioner                     :
                                                  :
         v.                                       :      No. 704 C.D. 2017
                                                  :
Workers' Compensation Appeal                      :
Board (Fisher Auto Parts, Inc.),                  :
                   Respondent                     :

# **O R D E R**

AND NOW, this 12th day of January, 2018, the order of the Workers'
Compensation Appeal Board dated May 11, 2017, in the above captioned matter is
hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge